936 So.2d 209 (2006)
John J. ABRAM, Jr. and Thais B. Abram
v.
EPEC OIL COMPANY (f/k/a) Tenneco Oil Company, et al.
No. 2005-CA-0626.
Court of Appeal of Louisiana, Fourth Circuit.
June 28, 2006.
Rehearing Denied July 25, 2006.
*210 Lawrence G. Gettys, Baron & Budd, P.C., Baton Rouge, Renee M. Melancon, Baron & Budd, P.C., Dallas, Texas, Glenn E. Diaz, Carlos A. Zelaya II, Chalmette, Louisiana, J. Wayne Mumphrey, Wayne B. Mumphrey, Clayton M. Connors, Mumphrey Law Firm L.L.C., New Orleans, Louisiana, Cameron R. Waddell, LeBlanc & Waddell, L.L.C., Baton Rouge, Louisiana for Plaintiffs/Appellees.
John G. Gomila, Jr., Madeleine Fischer, Jones Walker Waechter Poitevent Carrere & Denegre, New Orleans, LA, for Defendants/Appellants, El Paso Energy EST Company, trustee for EPEC Oil Company Liquidation Trust, Dean Blackwell, Charles Kilgore and Amos Pollard.
Richard J. Lorenz, Lorenz & Carter, Richmond, Texas, for Defendants/Appellants, Individual Executive Officers.
(Court composed of Judge JAMES F. McKAY III, Judge MAX N. TOBIAS JR., Judge EDWIN A. LOMBARD).
JAMES F. McKAY III, Judge.
In 1941, John J. Abram, Jr. went to work at the Flintkote plant in Chalmette. Mr. Abram worked there until 1961 except for two intervals: to serve in the military in 1945 and to work for six months at the *211 Tenneco (Bay Petroleum) refinery in Chalmette. During his employment at Flintkote, Mr. Abram worked in production of asbestos-containing roofing materials and later as a production supervisor. In 1961, Mr. Abram returned to Tenneco where he worked until his retirement in 1990.[1] During his employment at Tenneco, Mr. Abram worked in areas where he was exposed to asbestos.
In 1995, Mr. Abram was tested and diagnosed with asbestosis. On November 14, 1995, Mr. Abram filed an asbestos-related lawsuit in the Civil District Court for the Parish of Orleans.[2]
On August 9, 2000, Mr. Abram and his wife, Thais B. Abram, filed the instant lawsuit in St. Bernard Parish, asserting a claim for injuries resulting from occupational exposure to asbestos. Included as defendants were EPEC Oil Company f/k/a Tenneco Oil Company and a number of executive officers of Tenneco.[3] Mr. Abram died on September 1, 2000. On October 4, 2000, the lawsuit was amended to add a wrongful death and survival action for Mr. Abram's wife and children.
Prior to trial, the defendants filed an exception of prescription. The executive officer defendants also filed exceptions of no cause of action in so far as there could be no loss of consortium claims or wrongful death claims against them.[4] The trial court never addressed these exceptions. The matter proceeded to trial from January 27-30, 2003 and the trial court entered judgment and issued reasons for judgment on January 9, 2004. The trial court rejected all of the plaintiffs' intentional tort claims but held that prior to 1976, three of Tenneco's executive officers (Dean Blackwell, Charles Kilgore, and Amos Pollard) as well as Tenneco itself had been negligent.[5] The trial court awarded: $2,500,000.00 in general damages; $170,146.93 in special damages; $250,000 for Mrs. Abram's loss of consortium claim; and $150,000.00 for both of his children's loss of consortium claims. The defendants have appealed the trial court's judgment and the plaintiffs have answered their appeal.
On appeal, the defendants raise the following assignments of error: 1) the trial court never ruled on defendants' exception of prescription as to John Abram's survival action. The trial court erred by failing to rule and should have granted the exception; 2) the trial court erred as a matter of law when it held that Abram's employer, Tenneco, could be liable in negligence if the negligence occurred before 1976 and caused Abram's asbestos-related injuries; 3) the trial court erred as a matter of law in awarding loss of consortium damages when the court's liability determination was based upon alleged acts of negligence that occurred in 1976 and earlier when no claim for loss of consortium damages was recognized; 4) although the trial court did not denominate separate damages for wrongful death, the court referred in its judgment to items which can only be characterized as wrongful death damages. The trial court erred as a matter of law in *212 awarding funeral expenses and post-death loss of consortium against Tenneco and its executive officers as they were immune from wrongful death damages for alleged negligence at the time of Abram's death; 5) the trial court erred by failing to assign virile shares of liability to Garlock, Johns-Manville, Foster-Wheeler and Owens-Corning, all of whom settled with and/or were dismissed by plaintiffs; and 6) the trial court erred in finding Dean Blackwell, Amos Pollard, and Charles Kilgore negligent. The plaintiffs' lone assignment of error is that the trial court erred in failing to find Tenneco liable for its intentional acts.
A court must strictly construe the statutes against prescription and in favor of the claim that is said to be extinguished. Louisiana Health Serv. and Indem. Co. v. Tarver, 93-2449 (La.4/11/94), 635 So.2d 1090, 1098. In the instant case, Mr. Abram was diagnosed with asbestosis on February 20, 1995. On November 14, 1995, Mr. Abram was a party to an asbestos-related action against Flintkote and others filed in the Civil District Court of Orleans Parish. The action in Civil District Court was still pending when the present lawsuit was filed in St. Bernard Parish on August 9, 2000. It is undisputed that Flintkote was a joint tortfeasor with the other defendants in the instant case. Although the defendants argue that the plaintiffs' lawsuit is prescribed on its face, the burden to prove this is on the defendants. Scott v. Metropolitan Life Ins. Co., 97-1445 (La.App. 4 Cir. 2/11/98), 709 So.2d 223, 225. The defendants have failed to do this. On the other hand, the Abrams submitted a certified copy of the Civil District Court docket sheet, which shows the date the petition was filed and the original defendants, including Flintkote. Flintkote is a solidary obligor with the other defendants in the instant case. Therefore, prescription was interrupted by the timely filing of the Civil District Court action against Flintkote. See La. C.C. art. 1799.
In its reasons for judgment, the trial court states "that only prior to the 1976 amendments to the workers' compensation laws could Tenneco or its executive officers be liable under tort law for a negligent act that would have caused Mr. Abram is [sic] asbestos related injuries." That statement, however, is not completely accurate. Prior to 1976, "the workers' compensation statute provided that compensation was an employee's exclusive remedy against his employer for a compensable injury, leaving him free to pursue other remedies against third parties [executive officers]." Bazley v. Tortorich, 397 So.2d 475, 479 (La.1981). The goal of the 1976 amendment to La. R.S. 23:1032 was to extend to the executive officers of an employer the immunity already enjoyed by the employer under the section. See Malone & Johnson, 14 Louisiana Civil Law Treatise: Workers' Compensation Law and Practice § 361 (2002 ed.). Accordingly, the plaintiffs are free to pursue their claims for Mr. Abram's pre-1976 exposures to asbestos caused by the negligence of Tenneco's executive officers but not by Tenneco itself. As such, the trial court erred in finding that Tenneco was liable for any negligent acts that may have caused Mr. Abram's asbestos-related injuries. The trial court also found that there was not sufficient evidence presented to show intentional acts on the part of Tenneco or its executive officers. We find nothing manifestly erroneous or clearly wrong in this finding.
As a matter of law, the trial court erred in awarding loss of consortium damages to the plaintiffs when the court's liability determination was based upon negligent acts that occurred prior to 1976 when no claim for loss of consortium was recognized. *213 Louisiana did not allow claims for loss of consortium until 1982 when Civil Code article 2315 was amended to allow such claims. The application of the loss of consortium law to the defendants' actions prior to 1976 "would be an impermissible retroactive application of the law because it would go back to the past to evaluate the condition of the legality of the defendants' conduct, which occurred before the 1982 amendment." Landry v. Avondale Industries, Inc., XXXX-XXXX (La.12/3/03), 864 So.2d 117, 124.
The defendants contend that the trial court erred in awarding damages for wrongful death due to some discussion in its reasons for judgment. However, nowhere in the trial court's judgment are damages awarded for wrongful death. A trial court's reasons for judgment, while defining and elucidating a case, form no part of the official judgment it signs and from which appeals are taken. Kaufman v. Adrian's Tree Service, Inc., 2000-2381 (La.App. 4 Cir. 10/31/01), 800 So.2d 1102, 1104. Accordingly, the defendants' fourth assignment of error is without merit.
The appellants contend that the trial court erred in not assigning virile shares of liability to Garlock, Johns-Manville, Foster-Wheeler and Owens-Corning. The appellants had the burden of proving every element of the settling defendants' liability at trial. See Raley v. Carter, 412 So.2d 1045, 1047 (La.1982). The trial court found that the appellants failed to meet their burden to prove that any settling defendant other than Flintkote was liable. A "non-settling defendant must prove, not only that a settling defendant manufactured an asbestos containing product, but also that the products were used in such a manner that dust was emitted. Evidence of the mere physical presence of asbestos-containing material is insufficient to find a manufacturer liable to a plaintiff." Roberts v. Owens-Corning Fiberglas Corp., XXXX-XXXX (La.App. 1 Cir. 4/2/04), 878 So.2d 631, 642. Accordingly, we find no error in the trial court's not assigning virile shares of liability to the settling and dismissed defendants.
The appellants also contend that the trial court erred in finding Dean Blackwell, Amos Pollard and Charles Kilgore negligent.[6] As stated earlier, only prior to the 1976 amendments to the workers' compensation law could Tenneco's executive officers be liable under tort law for a negligent act that would have caused Mr. Abram's asbestos related injuries. In determining whether an executive officer will be liable in a case such as this, the test set forth in Canter v. Koehring Co., 283 So.2d 716 (La.1973) and followed by this Court in Hoerner v. ANCO Insulations, Inc., 2000-2333 (La.App. 4 Cir. 1/23/02), 812 So.2d 45 is used. Specifically, liability may be imposed if the executive officer had some direct duty to provide the plaintiff a safe place to work, including some control over purchase and availability of equipment and supplies. Id. at 63-64.
Dean Blackwell was the safety engineer at the Tenneco refinery from 1961 to 1967. Mr. Blackwell had no prior experience or training in safety. As safety engineer, Mr. Blackwell had authority to spend money for safety and to make recommendations to management for the expenditure of money related to safety. However, during his entire time as safety engineer, Mr. Blackwell never made a request for a safety-related budget item.
*214 Charles Kilgore was refinery general manager from 1967 to 1979, during which time every department ultimately reported to him. Mr. Kilgore testified that when it came to safety during this time period, the buck stopped with him. Mr. Kilgore also prepared the refinery's budgets and was the person in the refinery who had final approval over the budgets.
Amos Pollard testified that until he hired Mr. Blackwell, he was the person responsible for safety at the plant. From 1967 until his retirement in 1975, Mr. Pollard was administrative manager and one of his responsibilities in that role was supervision of plant safety. However, Mr. Pollard admitted that during his entire tenure at the refinery, from 1949 until 1975, Tenneco had no program to protect employees from asbestos.
Based on the record before this Court, all three of the aforementioned individuals had some direct duty to provide Mr. Abram with a safe place to work and had some control over the purchase and availability of equipment and supplies. Accordingly, we find no error in the trial court finding them liable.
For the foregoing reasons, we find the plaintiffs' suit has not prescribed. We reverse the trial court's finding of any liability on the part of Tenneco. We also reverse the trial court's awarding of loss of consortium damages to the plaintiffs. We affirm the trial court's finding of liability on the part of the executive officers in all other respects. Accordingly, we now amend the trial court's judgment to reflect that the portion of damages assigned to Tenneco shall now be borne by the other three remaining defendants.
AFFIRMED AND AMENDED IN PART AND REVERSED AND RENDERED IN PART.
TOBIAS, J., concurs in part and dissents in part.
TOBIAS, J., concurring in part and dissenting in part.
I concur with the finding of the majority that the trial court did not err in overruling the exception of prescription filed by the defendants. The petition for damages is not prescribed on its face, and the defendants failed to establish by a preponderance of the evidence that the case is prescribed in fact. The record before this court appears several pleadings in which plaintiffs' decedent's name appears as a party.
With regard to the finding of fault against Tenneco, I agree with the majority that the trial court erred, especially in light of the trial court's specific finding that the evidence did not preponderate to show "intentional acts on the part of Tenneco Oil or any of its executive officers."
However, I respectfully dissent from the majority's ruling with regard to the affirmation of that portion of the trial court's judgment against Pollard. It is undisputed that Pollard died on 7 May 2002. Although all parties were cognizant of his death prior to the trial of this matter, no action was taken of record to substitute Pollard's succession representative as a proper party defendant. A judgment entered against a deceased individual constitutes a legal nullity. Charia v. Allstate Ins. Co., 93-1230 (La.App. 4 Cir. 3/29/94), 635 So.2d 370. In accordance with our ruling in Charia, I would remand to the trial court so that it may substitute the succession representative or heir of Amos Pollard as a proper party to the suit.
NOTES
[1] In 1988, Mobil bought the plant from Tenneco.
[2] Richardson, et al. v. Metro Life Ins. Co. et al, Case No. 95-17063.
[3] El Paso Energy EST Company, the trustee for the EPEC Oil Company Liquidating Trust, is the current defendant in this litigation.
[4] The parties entered a stipulated order in which both sides agreed that the exceptions would be granted to the extent that the consortium claims and the wrongful death claims were based upon negligence.
[5] Flintkote settled with the plaintiffs prior to trial.
[6] Although the plaintiffs sued eight executive officers in all, the trial court only found three liable.