MAX N. TOBIAS, JR., Judge.
Iiln this wrongful death action, the plaintiffs appeal the trial court’s granting of summary judgment in favor of the defendants, Hopeman Brothers, Inc. and Charles N. Johnson, Jr. (collectively “Hopeman Brothers”); CBS Corporation (“Westinghouse/CBS”);[1] Foster Wheeler, LLC (“Foster Wheeler”); and Reilly Benton Company, Inc. (“Reilly Benton”), and dismissing the plaintiffs’ claims against them with prejudice.[2] For the following reasons, we affirm the trial court’s judgment in part, reverse in part, and remand the case to the trial court for further proceedings.
FACTS AND PROCEDURAL HISTORY
The plaintiffs, Charlotte Lucas, Ron Lucas, Gilbert Lucas, and Adam Lucas (collectively, the “Lucases”), in this matter are, respectively, the spouse and adult children of the deceased, Lois G. Lucas (the “decedent”). The Lucases filed this suit in January 2004 alleging that the decedent contracted asbestosis[3] from his occupational exposure to asbestos-containing materials from various contractors, | ¿product manufacturers, and product suppliers during his employment at Avondale Ship *693 yards, Inc. (“Avondale”) as a pipefitter helper from 1966 to 1975, and subsequently died from the disease in January 2003.
Discovery in this matter ended on 25 December 2009. Defendants, Hopeman Brothers, Westinghouse/CBS, Foster Wheeler, and Reilly Benton, separately filed motions for summary judgment seeking dismissal from the case contending that, despite the passage of four years from the inception of this suit, the plaintiffs had been unable to put forth evidence demonstrating that they will be able to satisfy their burden of proving at trial that Lucas worked with or around products sold and/or supplied by any one of them that was a substantial contributing factor to his alleged development of asbestosis.
In opposition to the defendants’ respective motions for summary judgment, the Lucases offered the following items of evidence:
1. Social Security records of the decedent, Lois G. Lucas.
2. A Letter dated 26 December 1975 by decedent’s physician, Dr. Edward J. Punery.
8.The decedent’s Petition for Workmen’s Compensation Benefits filed in 1976.
4. A judgment dated 24 March 1977 authorizing the parties to enter into a compromise settlement and agreement for workmen’s compensation benefits.
5. The decedent’s death certificate.
6. A Disputed Claim for Compensation form dated 12 January 2004.
7. The Petition for Damages and Wrongful Death filed by the plaintiffs.
[s8. A Notice of Hearing and Pre-Hearing Order dated 3 December 2004 issued by the Administrative Law Judge of the U.S. Department of Labor.
9.An Agreed Compensation Order dated 28 June 2005 issued by the Administrative Law Judge of the U.S. Department of Labor.
10. A Notice of Trial issued on 4 March 2009 in the instant matter.
11. A Notice of Signing of Judgment signed on 11 September 2009.
12. The Motion for Summary Judgment filed by Hopeman Brothers, Inc. and Charles N. Johnson, Jr. and Statement of Uncontested Material Facts.
13. The Hopeman Brothers, Inc.’s responses to the plaintiffs’ requests for admissions and interrogatories.
14. The sworn testimony of Charles N. Johnson, Jr. taken on 5 February 1996 and 7 February 1996 in the matter of “Re: Ferrel Waguespack, Sr. v. AMEC Plant Services, Inc., Fluro-Daniel Services Corp.,” Office of Workers’ Compensation, State of Louisiana, No. 94-07469, District 05.
15. The reports of Dr. James Milette dated 3 December 1992 and 26 September 1995.
16. The sworn testimony of Dennis J. Perk taken on 18 November 1996 in the matter of “Jefferson Parish Asbestos Cases (MLF) v. Eagle, Inc., et al,” Twenty-Fourth Judicial District, Parish of Jefferson, No. 462-477.
17. The sworn testimony of Wilton David Mouton taken on 3 December 2008 in the matter of “Wilton David Mouton v. Flexitallic, Inc., et al,” Civil District Court for the Parish of Orleans, No. 95-13330.
18. The sworn testimony of Wilton David Mouton taken on 3 Decern- *694 ber 2008 in the matter of “Charlotte Lucas, et al v. Hopeman Brothers, Inc., et al,” Civil District Court for the Parish of Orleans, No. 04-1127.
19. The sworn testimony of John Bowman taken on 20 September 1995 in the matter of “In re Asbestos Plaintiffs, et al v. Borden, Inc., et al,” Civil District Court for the Parish of Orleans, no. 91-18397, Flight Number 5.
20. The sworn testimony of John Bowman taken on 25 January 1996 in the matter of “Ferrell Waguespack, Sr. v. AMEC Plant Services, et al.”
21. The sworn testimony of Warren K. Watters taken on 2 August 1996 in the matter of “In re Asbestos Plaintiffs, et al v. Borden, Inc., et al,” Civil 4District Court for the Parish of Orleans, No. 91-18397, Flight Number 6.
22. Various correspondence between Foster Wheeler Corporation and Avondale Shipyards occurring between 1964 and 1967 with attached American Bureau of Shipping Certificates for equipment, including piping, tubing, and other Foster Wheeler equipment to become part of the boilers on vessels at Avon-dale.
23. The sworn testimony of Golzie J. Danos, Jr. taken on 22 March 2004 in the matter of “Golzie and Faye Danos v. Avondale Industries, Inc., et al.”
24. The sworn testimony of Rudy J. Walker, Sr. taken on 8 May 2003 in the matter of “Rudy and Joan Walker v. Avondale Industries, Inc.”
25. The sworn testimony of Luther Dempster taken on 24 March 1994 in the matter of “Luther Dempster, et al v. Avondale Industries, Inc. et al,” Civil District Court for the Parish of Orleans, No. 93-7438.
26. A partial transcript of the proceedings held on 19 March 1996 in the matter of “In re: Asbestos Plaintiffs only on Behalf of Plaintiff, Merlin Charlot v. Borden, Inc., et al,” Civil District Court for the Parish of Orleans, No. 91-18397 c/w 93-16575.
27. The sworn testimony of Lawrence P. Delhommer taken on 12 July 1984 and 10 December 1986 in the matter of “Lawrence P. Delhommer v. Johns-Manville Corporation, et al,” Civil District Court for the Parish of Orleans, No. 83-12872.
28. An unofficial partial transcript of the proceedings in connection with the trial on the merits held on 12, 14 and 16 January 2004 1/12/04 in the matter of “Gerald Dufrene, et al v. Avondale Industries, Inc., et al,” Civil District Court for the Parish of Orleans, No. 00-1941.
29. The sworn testimony of Steve Du-frene taken on 4 August 1997 in the matter of “Steve J. Dufrene and Charlene T. Dufrene v. Avondale Industries, Inc., et al,” Civil District Court for the Parish of Orleans, No. 97-04976 c/w 93-16888.
30. The sworn testimony of Maurice K. Ockmond taken on 1 June 1995 in the matter of “Douglas R. Abadie v. Metropolitan Life Insurance Company, et al,” Twenty-Fourth Judicial District Court, Parish of Jefferson, No. 424-010.
31. The sworn testimony of Allen Rad-er taken on 31 October 1995 in the matter of “Luther Dempster, et al v. Avondale Industries, Inc., et al,” *695 Civil District Court for the Parish of Orleans, No. 93-7488.
| k32. The sworn testimony of Lester Adams taken on 13 February 1995 in the matter of “Douglas R. Abadie v. Metropolitan Life Insurance Company, et al,” Twenty-Fourth Judicial District Court, Parish of Jefferson, No. 424-010.
33. The sworn testimony of Lester Plaisance taken on 24 May 1994 in the matter of “In re: Asbestos Plaintiffs v. Borden, Inc., et al,” Civil District Court for the Parish of Orleans, No. 91-18387, Flight Number 2.
34. The sworn testimony of Irvin Joseph Grabei’t taken on 8 March 2005 in the matter of “Irvin Joseph Grabert v. Northrop Grumman Ship Systems, Inc. (formerly Avondale Industries, Inc.), et al,” Civil District Court for the Parish of Orleans.
The defendants’ motions argued that despite the numerous exhibits submitted by the plaintiffs, except for the deposition testimony of Wilton David Mouton, the evidence is of no consequence because not one of these witnesses has any personal information as to the work history or job activities actually performed by the decedent at Avondale. Additionally, the defendants argued that the plaintiffs failed to produce evidence establishing that the decedent worked with or was exposed to any specific asbestos-containing product that they manufactured, sold, supplied, distributed, and/or installed at Avondale.
The trial court granted summary judgment in favor of each of the defendants finding there was insufficient evidence to overcome the plaintiffs’ burden of proof at trial. The Lucases have appealed that ruling contending the trial court committed reversible error by either weighing conflicting evidence or making credibility determinations, thereby misapplying the appropriate standard for granting summary judgment in favor of the defendants. Additionally, the Lucases aver that the trial court erred by failing to infer the decedent’s proximity to asbestos-containing products during his years at Avondale as supported by ^circumstantial evidence contained in the record. They request that this court reverse the trial court judgment and remand the case for a trial on the merits.
STANDARD OF REVIEW
As we have often stated, “[o]ur review of this grant of summary judgment is de novo but governed by La. C.C.P. art. 966.” McAskill v. American Marine Holding Co., 07-1445, p. 2 (La.App. 4 Cir. 3/4/09), 9 So.3d 264, 266; see also Shambra v. Roth, 04-0467, p. 2 (La.App. 4 Cir. 9/29/04), 885 So.2d 1257, 1259. Summary judgments are favored and “factual inferences reasonably drawn from the evidence must be construed in favor of the party opposing the motion and all doubt must be resolved in the opponents’ favor.” Willis v. Medders, 00-2507, p. 2 (La.12/8/00), 775 So.2d 1049, 1050. Summary judgments “shall be rendered if the pleadings, depositions, answers to interrogatories, and admissions on file together with affidavits, if any, scrutinized equally, show that there is no genuine issue of material fact, and that the mover is entitled to judgment as a matter of law.” La. C.C.P. art. 966(B). On a motion for summary judgment, however, the trial court cannot make credibility determinations. Independent Fire Ins. Co. v. Sunbeam Corp., 99-2181, 99-2257, p. 16 (La.2/29/00), 755 So.2d 226, 236. “It is not the function of the trial court on a motion for summary judgment to determine or even inquire into the merits of the issues raised.” Knowles v. McCright's Pharmacy, Inc., 34,559, p. 3 (La.App. 2 Cir. 4/4/01), *696 785 So.2d 101, 103. “Additionally, the weighing of conflicting evidence has. no place in summary judgment procedure.” Id.
“A fact is material if it is essential to the plaintiffs cause of action under the applicable theory of recovery and, without the establishment of the fact by a ^preponderance of the evidence, the plaintiff could not prevail.” Danos v. Avondale Indus., Inc., 07-1094, p. 3 (La.App. 4 Cir. 7/2/08), 989 So.2d 160, 162. “Generally, material facts are those that potentially insure or preclude recovery, affect the litigant’s ultimate success, or determine the outcome of a legal dispute.” Id. Thus, to determine if the trial court erred in granting the summary judgment motions by Hopeman Brothers, Westinghouse /CBS, Foster Wheeler, and/or Reilly Benton, respectively, we are required to determine whether any genuine issues of material fact remain as to the liability of any one or more of the defendants.
DISCUSSION
The decedent was employed by Avon-dale for approximately nine years as a pipefitter’s helper from 1966 to 1975. During a portion of that time, from 1967 through 1972, he was assigned to assist Avondale pipefitter, Wilton David Mouton. It is undisputed that Mouton provides the only eyewitness evidence in this case with respect to the tasks that the decedent allegedly performed as a pipefitter’s helper during his employment at Avondale. According to Mouton, he and the decedent performed plumbing tasks for new construction and repair work on a variety of vessels, including Destroyer Escorts and U.S. Coast Guard Cutters. Such work was allegedly performed throughout the various vessels, including the engine rooms, living quarters, and galley spaces. Mouton stated that this plumbing work included maintenance and repair on pumps, gaskets, and valves, in addition to running water lines to the bathrooms and staterooms. Mouton testified that, on occasion, the plumbing repair work would necessitate the removal of alleged | sasbestos-containing wallboard as well as ceiling tiles in order to get to leaking pipes.[4]
It is scientifically proven, and legislatively recognized, that a causal relationship exists between asbestos exposure and the occurrence of asbestosis. See Rando v. Anco Insulations, Inc., 08-1163, 08-1169, pp. 15-16 (La.5/22/09), 16 So.3d 1065, 1080. In the case at bar, the Lucases contend that they presented a bevy of evidence to the trial court showing that genuine issues of material fact exist regarding whether the decedent was sufficiently exposed to the various asbestos-containing products that were either manufactured, supplied, sold, and/or installed by the respective defendants and that the trial court improperly weighed this evidence, and/or improperly made credibility determinations based on this evidence, when it granted the defendants’ motions for summary judgment.
Contrariwise, the defendants aver that the sworn testimony the Lucases presented regarding the decedent’s alleged exposure to asbestos-containing products is irrelevant because none of the deponents had any personal information as to the work history or job activities actually performed by the decedent while he was at Avondale. According to the defendants, the plaintiffs’ summary judgment evidence — at best — establishes only that at *697 some point in time between 1967 through 1972, Hopeman Brothers, Westinghouse/CBS, Foster Wheeler, and Reilly Benton were among a number of manufacturers and suppliers of asbestos-containing products to Avondale. Each of the defendants argue that the Lucases have failed to provide any evidence specifically establishing that the decedent was actually exposed to their particular product(s) at a given location at Avondale | nduring his exact years of employment, which substantially contributed to his alleged contraction of asbestosis.
The courts know “through years of litigation that industrial asbestos-related diseases have a latency period of 10 to 40 years.” Danos, 07-1094, p. 4, 989 So.2d at 168. As a result, witnesses to the exposure of the asbestos are often elderly or deceased. “Consequently, litigants are often forced to use depositions and transcripts from other proceedings to bolster their position.” Danos, 07-1094, p. 4, 989 So.2d at 163. We find this case presents such a situation.
As noted above, in order to determine whether the trial court erred in granting the motions for summary judgment in favor of Hopeman Brothers, Westinghouse/CBS, Foster Wheeler, and/or Reilly Benton, we must determine whether any genuine issues of material fact remain. The following discussion sets forth our determinations with respect to each of the four defendants involved in this appeal.

Hopeman Brothers

Hopeman Brothers was a joiner contractor at Avondale from the early 1960s through the 1990s. As a joiner contractor, Hopeman Brothers was responsible for outfitting the interior spaces of various vessels; in particular, U.S. Coast Guard Cutters.[5] Hopeman Brothers’ work included the installation of comfort and fire insulation, joiner paneling, furniture, furnishings, and shelving units. The Lu-cases contend that Hopeman Brothers employees were present at Avondale onboard Coast Guard Cutters working with asbestos-containing products to which the | indecedent was exposed and that this exposure was a significant contributing factor in his contraction of asbestosis. The Lucases aver that Hopeman Brothers was negligent in the handling of asbestos products, specifically the handling and installation of asbestos-containing wallboard, in the vicinity of the decedent when he worked at Avondale.
According to Hopeman Brothers, it was the end-user of asbestos-containing products on ships constructed at Avondale, including Marinite wallboard manufactured by Johns-Manville and Micarta wallboard manufactured by Westinghouse/CBS, when the use of asbestos-containing products was mandated by plans and specifications provided to Hopeman Brothers by Avondale.[6] The plaintiffs allege that, in *698 completing this work, Hopeman Brothers cut and installed Micarta decorative wallboard supplied by Westinghouse/CBS. Though Hopeman Brothers concedes that the wallboard it cut and installed on Coast Guard Cutters at Avondale contained asbestos, it argues that the Lucases have failed to set forth any evidence that Hope-man Brothers was cutting and/or installing this wallboard at the same time that the decedent was also working onboard a Coast Guard Cutter or that the decedent was otherwise exposed to wallboard handled, cut, or installed by Hopeman Brothers while at Avondale.
Because Mouton is the only eyewitness who can testify as to the decedent’s work activities and his alleged exposure to asbestos at Avondale, Hopeman Brothers looks solely to Mouton’s deposition testimony and contends it is Incompletely devoid of any reference to Mouton, or the decedent, being in an area when Hopeman Brothers’ work with joiner panels or wallboard took place. Although Mouton testified that he (and the decedent) “constantly” worked side-by-side with Hopeman Brothers employees, Hopeman Brothers argues that Mouton’s testimony limits Hopeman Brothers’ activities to work on flooring, doors, and ceiling tiles. Specifically, Hopeman Brothers concentrates on the following portion of Mouton’s testimony taken in his own case:
Q. And on the cutters, can you tell me if you remember what kind of work Hopeman employees would be doing while you were around?
A. Pretty much flooring, repairing doors that wouldn’t close properly.
Q. Anything else other than flooring and repairing doors?
A. From what I could recall.
Q. So, of the other things that you initially listed that you remember Hopeman doing as a company, you think pretty much the only thing would — you would have been around would have been flooring and repairing doors?
PAUL LEGER:
Object to the form.
A. Yes.
BY BLAINE MOORE:
Q. Okay.
A. Yes.
Thus, according to Hopeman Brothers, the only issue is whether its employees used or installed ceiling and/or floor tiles containing asbestos upon the Coast Guard Cutters, not whether Hopeman Brothers used or installed asbestosjcontaining12 wallboard.[7] We disagree. While Mouton did testify as quoted above in his own asbestos ease, he testified as follows in the instant case:
THE WITNESS:
With Hopeman Brothers, they — they installed all this framework, all the— all the metal, and — and the ceiling tiles, and the — the walls (indicating). If we had a leak while — while the shop was — some of these rooms are completed, and they start up equipment while the ship is not on sea trial. It’s still sitting in the yard. You have a leak. Everything ain’t perfect. They’ll test the line, and *699 they’ll have a leak. So we had to go in there and remove this.
Q. When you say “this,” you’re talking about the ceiling—
A. The ceiling—
Q. tile?
A. Yeah. Not the framework. I mean we couldn’t cut all that. We just— you’d get — you’d get Hopeman Brothers to come cut that down if you had to cut. But you’d remove the ceiling. You’d remove a piece of Sheetrock if there was Sheetrock, or whatever they had.
Q. But the pi — the—the piping ran along the ceiling?
A. Yes, sir.
Q. Steam piping?
A. Steam.
Q. Water piping?
A. Water, steam, electrical lines—
lisQ- Okay.
A. —everything ran in the ceiling.
(Emphasis supplied.)
We find Mouton’s deposition testimony in the instant case clearly suggests that he and the decedent were around Hopeman Brothers employees while they were installing “walls,” or otherwise, wallboard. While Mouton did not specifically state Hopeman Brothers employees installed “wallboard” or “Micarta,” he does testify that he and the decedent were present and working side-by-side with Hopeman Brothers employees on the vessel and in an area where Hopeman Brothers was, among other things, installing walls. It is undisputed that the “walls” Hopeman Brothers installed on these vessels contained asbestos.
Applying the legal precepts attendant to determining whether evidence is sufficient to defeat a motion for summary judgment, we find Mouton’s testimony establishes that it was more probable than not that the decedent was exposed to asbestos-containing wallboard used and installed by Hopeman Brothers. We further find Mouton’s testimony creates a genuine issue of material fact upon which reasonable minds could differ as to whether the decedent’s exposure to the asbestos-containing wallboard installed by Hopeman Brothers was a significant contributing factor in his contraction of asbestosis and that the trial court erred in ruling otherwise. Accordingly, we reverse the trial court’s dismissal of the Lucases’ claims against Hopeman Brothers and Charles Johnson and remand the matter for further proceedings.
| uWestinghouselCBS
CBS, formerly Westinghouse, supplied Micarta wallboard to Hopeman Brothers, which Hopeman Brothers then used in the joinery work it performed on various vessels at Avondale, including U.S. Coast Guard Cutters. It is undisputed that the Micarta wallboard supplied by Westinghouse/CBS to Hopeman Brothers contained asbestos.
The plaintiffs acknowledge that Hope-man Brothers, in addition to installing Mi-carta wallboard manufactured by Westinghouse aboard the vessels at Avondale, also installed wallboard manufactured by others, including Johns-Mansville and UN-ARCO. Nonetheless, the plaintiffs seek to hold Westinghouse/CBS liable for substantially causing and/or contributing to the decedent’s asbestosis as a result of his exposure to asbestos from the Micarta wallboard they contend Hopeman Brothers was using in the performance of its work at a time and in an area of the Coast Guard Cutters where the decedent was also working.
To prevail in an asbestos ease, the plaintiffs must show, by a preponderance of the evidence, that the decedent was exposed to asbestos from the defendant’s product, “and that he received an *700 injury that was substantially caused by that exposure.” Vodanovich v. A.P. Green Indus., Inc., p. 3 (La.App. 4 Cir. 3/3/04), 869 So.2d 930, 932. “When multiple causes of injury are present, a defendant’s conduct is a cause in fact if it is a substantial factor in generating the plaintiffs harm.” Id.; Quick v. Murphy Oil Co., 93-2267, p. 8 (La.App. 4 Cir.9/20/94), 643 So.2d 1291, 1294.
“There can be more than one cause in fact of an accident as long as each cause bears a proximate relation to the harm that occurs and it is substantial in nature.” Vodanovich, p. 3, 869 So.2d at 932. “A plaintiff seeking to recover under 11fieither negligence or strict” products liability “theories must prove that the negligent act or defect complained of was a cause-in-fact of the injury.” Id.
In Quick v. Murphy Oil Co., supra, we found that:
When evaluating liability in an asbestos claim, we apply traditional theories of tort liability (for example negligence and products liability) which require proof of causation. See Cole v. Celotex Coiy., 599 So.2d 1058 (La.1992); Halphen v. Johns-Manville Sales Corp., 484 So.2d 110 (La.1986); Thompson v. Johns-Manville Sales Corp., 714 F.2d 581 (5 th Cir.1983), cert. den., 465 U.S. 1102, 104 S.Ct. 1598, 80 L.Ed.2d 129 (1984). Asbestos cases typically involve multiple defendants and courts have analyzed the cases under concurrent causation, a doctrine which “proceeds from the assumption that more than one defendant substantially contributed to the plaintiffs injury.” 210 E. 86 th Street Corp. v. Combustion Engineering, Inc., 821 F.Supp. 125, 150 (S.D.N.Y.1993).
93-2267, p. 8, 643 So.2d at 1294.
The first element of proof under either negligence or products liability is causation. See Dixie Drive It Yourself System v. Am. Beverage Co., 242 La. 471, 137 So.2d 298 (1962). In Dixie Drive It Yourself System, the Court stated that “conduct is a cause-in-fact of harm to another if it was a substantial factor in bringing about that harm.” Id., 242 La. at 482, 137 So.2d at 302. The court stated that negligent conduct is a substantial factor if the ham would not have occurred without the conduct, i.e., but for defendant’s conduct, the plaintiff would not have sustained injury. Id. The court thereby equated the two concepts of substantial factor and necessary antecedent. Rando, 08-1163, 08-1169, p. 32, 16 So.3d at 1089, citing Malone, Ruminations on Dixie Drive It Yourself Versus American Beverage Company, 30 La.L.Rev. 363, 373 (1970).
Quick makes it clear that a plaintiffs burden of proof against multiple defendants in a long-latency case is not relaxed or reduced because of the degree of | ^difficulty that might ensue in proving the contribution of each of the defendant’s product to the plaintiffs injury. Thus, in an asbestos case, “the claimant must show that he had significant exposure to the product complained of to the extent that it was a substantial factor in bringing about his injury.” In re Asbestos v. Bordelon, Inc., 96-0525, p. 30 (La.App. 4 Cir. 10/21/08), 726 So.2d 926, 948.
In the case at bar, the decedent’s exposure to Westinghouse/CBS’ asbestos-containing products, ie. the Micarta wallboard, must constitute a substantial factor in having caused his asbestosis in order for the plaintiffs to prevail. In short, a finding that Westinghouse/CBS’s conduct or product was a contributing factor alone is insufficient to support liability in this case.
While the plaintiffs have established that the decedent was more probably than not exposed to asbestos-containing wallboard installed by Hopeman *701 Brothers, we find the plaintiffs have failed to show that Westinghouse/CBS’s product was a cause in fact of the decedent’s harm. Specifically, we find the plaintiffs have failed to set forth sufficient proof that it was more probable than not that the wall-boarfl to which the decedent was actually exposed was Micarta wallboard supplied by Westinghouse/CBS, or that the Micarta wallboard (as opposed to Maranite or UN-ARCO) was a substantial factor in having caused his asbestosis. “A plaintiff must establish his claim to a reasonable certainty, [sic] mere possibility, and even unsupported probability, are not sufficient to support a judgment in the plaintiffs’ favor.” Vondanovich, 03-1079, p. 5, 869 So.2d at 934. Accordingly, summary judgment in favor of Westinghouse/CBS was appropriate and we affirm this portion of the trial court’s judgment.

Foster Wheeler

|17The Lucases allege that the decedent was exposed to asbestos at a time when insulation work was being performed on boilers manufactured by Foster Wheeler at Avondale. While the plaintiffs offer a plethora of evidence which places Foster Wheeler and its boilers at Avondale, there is no record evidence that insulators were involved in the operation of the boilers or that work on these boilers involved the dissemination of any asbestos-containing dust fibers. Moreover, the evidence does not substantiate that the work being performed on Foster Wheeler boilers was conducted during the timeframe involving the decedent or in such a manner so as to expose the decedent to asbestos.
Our de novo review of the various documents and depositions attached to the Lu-cases’ opposition to the motions for summary judgment indicate that at least three manufacturers and/or suppliers of boilers were at Avondale during the alleged time-frame wherein the decedent was employed as a pipefitter, including: Foster Wheeler, Babcock and Wilson, and Combustion Engineers. However, not one of these depositions places the decedent on a specific vessel, at a specific time, working on or in the vicinity of a Foster Wheeler boiler, or even suggests that he was otherwise exposed to asbestos in relation to the boilers.
Additionally, the deposition testimony of Mouton indicates that the boilers came pre-assembled and were merely set into place on the vessel obviating the need for insulators in the operation of the boilers at Avondale. And while Mouton identified Foster Wheeler as one of the manufacturers of the boilers upon which he did repair work involving asbestos, these boilers were associated with Mouton’s work at. Nine Mile Point when he was employed by LP & L, not Avondale.
At best, the evidence submitted by the plaintiffs merely confirms that Foster Wheeler boilers were somewhere at Avon-dale, on some of the vessels being | ^constructed and/or repaired, during some of the years of the decedent’s employment. As previously stated, in an asbestosis case, the plaintiff has the burden of establishing at trial that he had significant exposure to asbestos-containing products “to the extent the exposure was a substantial factor in bringing about his injury” or disease. Bordelon, 96-0525, p. 30, 726 So.2d at 948. The mere physical presence of asbestos-containing materials at a particular job site is insufficient to find liability. See Abram v. Epic Oil Co., 05-0626, p. 6 (La.App. 4 Cir. 6/28/06), 936 So.2d 209, 213, quoting Roberts v. Owens-Corning Fiberglass Corp., 03-0248, p. 12 (La.App. 1 Cir. 4/2/04), 878 So.2d 631, 642.
We find the appellate record completely devoid of evidence linking the decedent’s alleged asbestos exposure to any insulation work performed on Foster Wheeler boil *702 ers. Consequently, the Lucases have failed to provide evidence which would defeat Foster-Wheeler’s motion for summary judgment. We, therefore, affirm that portion of the trial court’s judgment dismissing the Lucases’ claims against Foster Wheeler.

Reilly Benton

The Lucases contend that the decedent was exposed to asbestos as a result of working with or around half round insulation containing asbestos that was sold and/or supplied by Reilly Benton. Reilly Benton does not deny that it sold and/or supplied insulation materials to Avondale at various times, some of which contained asbestos, including calcium silicate products.[8] However, Reilly Benton contends that evidence of a mere physical presence of asbestos-containing materials is insufficient to establish liability. We agree.
| min support of their assertions of liability against Reilly Benton, the plaintiffs first rely on a portion of Mouton’s deposition testimony wherein he describes the insulation that was purportedly being removed in work conducted on an oil tanker — a vessel upon which Mouton testified that the decedent was not working. Mouton was unable to identify the brand name of any of the insulation materials he claims to have removed while at Avondale. Mouton further testified regarding the decedent installing insulation, or blankets, while at Avondale, but Mouton could not state who manufactured the blankets nor does Mouton’s testimony establish that the blankets actually contained asbestos.
The testimony of Warren Watters, President of Reilly Benton, does not substantiate the Lucases’ claim that the decedent was exposed to asbestos-containing calcium silicate insulation and cloth supplied by Reilly Benton. First, it is indisputable that Reilly Benton was merely one of numerous vendors that sold calcium silicate products to Avondale. Next, Watters testified that while the Reilly Benton materials containing asbestos sold to Avondale varied from year to year, they may have comprised fifty percent of the total products that were sold.
We agree with Reilly Benton that the evidence does nothing more than place the decedent at a worksite with products that were made by multiple manufacturers and supplied by multiple vendors, but does not specifically place him around asbestos fibers emanating from a product Reilly Benton sold and/or supplied to Avondale. The record lacks evidence upon which reasonable minds could differ substantiating that the decedent was exposed to asbestos-containing products sold and/or supplied by Reilly Benton. Consequently, we agree with the trial court that even if all factual inferences reasonably drawn from the record evidence were construed in favor of the plaintiffs, the Lucases will still be unable to satisfy their |2pburden of proving that the decedent was exposed to an asbestos-containing product sold and/or supplied by Reilly Benton such that it would have been a substantial contributing factor in the development of the decedent’s asbestosis. Accordingly, we affirm the trial court’s judgment summarily dismissing the Lucases’ claims against Reilly Benton.
CONCLUSION
For the foregoing reasons, we conclude the trial court erred in granting summary judgment in favor of Hopeman Brothers. Therefore, we reverse the trial court’s judgment dismissing the plaintiffs’ claims *703 against Hopeman Brothers and remand this case to the trial court for further proceedings. We affirm the judgment of the trial court granting summary judgment in favor of Westinghouse/CBS, Foster Wheeler, and Reilly Benton.
AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.

. CBS Corporation is a Delaware corporation, f/k/a Viacom, Inc., successor by merger to CBS Corporation, a Pennsylvania corporation, f/k/a Westinghouse Electric Corporation.

. This case has been resolved as to all other named defendants.

.Asbestosis is an irreversible condition featuring inflammation and scarring of the lung caused by prolonged exposure to quantities of asbestos, a material once widely used in construction, insulation, and manufacturing. When asbestos is inhaled, fibers penetrate the breathing passages and irritate, fill, inflame, and scar lung tissue.

. On 3 December 2008, Mouton testified by deposition in both his own personal asbestos case entitled, "Wilton David Mouton v. Flexitallic, Inc., et al,” as well as in the instant case.

. Micarta/Marinite is an asbestos board construction material composed of two sheet products joined together. Two sheets of Mi-carta, a high pressure decorative laminate, are bound to both sides of a sheet of Marinite. Together the Micarta and Marinite were used as one product as fire-safe wall partitions in ship construction. Hopeman Brothers also installed a similar wallboard onboard these vessels manufactured by UNARCO.

. The evidence contained in the record shows the ceiling tiles installed by Hopeman Brothers onboard the Coast Guard Cutters did not contain asbestos. The affidavit of Charles Johnson, former Executive Vice President of Hopeman Brothers, attests that ''[a]ll of the ceiling tiles on the Unites States Coast Guard Cutters were constructed of aluminum and not of any asbestos-containing material.” The Lucases did not present any evidence to refute this purported fact.

. The record indicates that Reilly Benton was merely one of numerous vendors that sold calcium silicate products to Avondale.