JAMES F. McKAY III, CHIEF JUDGE
Lin this mesothelioma ease, both the defendant Union Carbide-Corporation and the plaintiffs, Frank Romano, Sr. and Lynn Romano, appeal a jury verdict entered by the trial court as well as the trial court’s denial-of their respective attempts to nullify the: jury’s verdict. The plaintiffs seek an increase in the quantum of damages, while the defendant questions liability and causation.
FACTS AND PROCEDURAL HISTORY
Frank Romano, Sr. grew up in Marrero, Louisiana and lived about two blocks away from the Johns-Manville Corporation’s plant there from the 1940’s until he went away to college in the early 1960’s. Following college, Mr. Romano worked at Union Carbide Corporation’s Taft facility for nine to ten months during 1967 and 1968, For the majority of time that he worked at the Taft facility, Mr. Romano was assigned to the stores department, where his occupational asbestos exposure was thousands of times above background levels on a daily basis.
After he contracted malignant mesothe-lioma, Mr. Romano and his wife Lynn filed suit against Union Carbide and .ten other defendants on September 12, |⅞2014.[1] Two of the defendants, Capital Rubber and Specialty Company, LLC and Gulf Belting and Gasket Corporation, Inc., filed a third party demand against- Claims Resolution Management Corporation, as successor in interest to Johns-Manville. The case proceeded to a jury trial, which ran from March 14 through 22,2016.
At trial, Mr. Romano and his treating physicians, Drs. Pettiford and Satti, all testified. Mr. Romano’s medical causation expert, Dr. John Maddox, also testified via a video deposition. Testimony at trial indi-eated that as a result of the diagnosis and treatment of mesothelioma, Mr. Romano underwent a PleurX catheter insertion, or tunnel catheter, to periodically drain fluid build-up in his lungs; suffered from a staph infection as a'result of the PleurX catheter insertion that necessitated hospitalization for a week; underwent a radical pleurectomy procedure to remove part of the lining of his lung as well as one of his ribs; endured “hot” chemotherapy (a treatment where physicians bathe the chest cavity with a very high temperature, high concentration chemotherapy agent); endured four rounds of what would be considered traditional chemotherapy; and underwent an additional procedure following his radical pleurectomy to repair diaphragmatic herniation, because Mr. Romano’s intestinal contents herniated from the inside of his abdomen into his chest cavity, causing severe- abdominal pain, nausea, vomiting, inability to eat and significant weight loss. His medical bills totaled over $566,274.00 and he continued to be in pain two years following.his diagnosis and |3his numerous surgical procedures. His treating physicians, Drs. Pettiford and Satti, testified that Mr, Romano’s survival probability for five years beyond diagnosis was between 10-20%. Dr. Satti believed that reoccurrence was probable in an inoperative location, and that Mr. Romano’s future would be filled with prolonged palliative chemotherapy and a very painful and uncomfortable death from mesothelioma. Mr. Romano would experience considerable fatigue, decrease in appetite, weakness and shortness of breath due to accumulating fluid in the lungs. Dr. Satti also testified that Mr. Romano was very stressed when he was diagnosed and that he lives a life of anxiety as he anticipates a reoccurrence of mesothelioma.
*180 On March 22, 2016, the jury returned a verdict in favor of plaintiffs and against the defendants. Included in the jury verdict were awards of $566,274.00 in stipulated past medical expenses; $150,000.00 in future medical expenses; $250,000.00 for loss of enjoyment of life, past and future; and $250,000.00 for general damages, including past and future physical pain and suffering, past and future mental anguish, and past and future disability. The trial court entered judgment on April 18, 2016, in accord with the jury verdict. After the jury’s verdict was entered, the plaintiffs filed their motion for partial judgment notwithstanding the verdict on damages only, or, in the alternative motion for partial new trial on damages only, arguing that these awards were grossly inconsistent with the evidence adduced at trial and quantum in similar cases. On May 26, 2016, the trial court denied this motion. The trial court also denied Union Carbide’s request for a verdict reduction for Johns-Manville’s fault. On June 3, |42016, the plaintiffs filed a motion and order for devolutive appeal, which the trial court signed on June 6, 2016. Union carbide filed a petition and order for suspensive appeal, which the trial court signed on June 29, 2016.
DISCUSSION
On appeal, Union Carbide raises the following assignments of error: 1) the trial court erred in not reducing the jury verdict by one-half for the fault of Johns-Manville because it is treated as a settled party under Louisiana law and under the provisions of its settlement trust; and 2) the trial court erred in allowing plaintiffs’ only medical causation expert to testify regarding unsupported hypotheticals and then erred in not granting a directed verdict due to the absence of any testimony to support a causation finding. Alternatively, the jury’s verdict finding Union Carbide at fault should be reversed because plaintiffs’ only medical causation expert’s opinion was solely based on unfounded hypothetical questions which carry no weight. The Romanos also raise two assignments of error on appeal: 1) the jury abused its discretion when it awarded general damages to plaintiffs in the amount of $250,000.00 for Frank Romano’s past, present and future pain and suffering and an additional $250,000.00 for Frank Romano’s past, present and future loss of enjoyment of life; and 2) the district court abused its discretion when it denied plaintiffs’ motion for partial judgment notwithstanding the verdict on damages only, or, in the alternative, motion for partial new trial on damages only because the jury’s award was grossly below other mesothelio-ma verdicts in this state.
1 fiWe will first address the assignments of error raised by Union Carbide. In its first assignment of error, Union Carbide contends that the trial court erred in denying its motion in limine and not reducing by one-half for the fault of Johns-Manville because it is treated as a settled party under Abadie v. Metropolitan Life Ins. Co., 00-344 (La.App. 5 Cir. 3/28/01), 784 So.2d 46 [2] and the terms of its settlement trust. The trial court found that Union Carbide was not entitled to a virile share credit under the facts of this case as the plaintiffs never settled with the Johns-Manville Settlement Trust.
Under pre-comparative fault law, which governs this case, joint tortfeasors were solidarily liable for a tort victim’s injury. Under solidary liability, “the obligee, at his choice, [could] demand the whole performance from any of the joint and indivisible *181 obligors.” Berlier v. A.P. Green Industries, Inc., 2001-1530 (La. 4/3/02), 815 So.2d 39, 48. The only remedy available to a solidary obligor from whom the whole performance was sought was to seek “contribution” from the joint tortfeasors in the amount of the joint tortfeasor’s “virile share.” Daniels v. Conn, 382 So.2d 945 (La. 1980). However, when a plaintiff settled with a joint tortfeasor, the joint tortfeasor was also released from paying contribution to the solidary obligor. See Wall v. American Employers Insurance Co., 386 So.2d 79, 82-83 (La. 1980). The law imposed a tradeoff in this situation that would both produce settlements and cure the solidary obligor’s inability to seek contribution from the settling party; plaintiffs recovery against the solidary obligor was 1 f,reduced by the settling joint tortfeasor’s virile share. Id. Before the solidary obligor could receive a “credit” for the settling parties’ virile share, the fact that the settling party was in fact a joint tortfeasor had had to be established. Id.; Abram v. EPEC Oil Co., 2005-0626 (La.App. 4 Cir. 6/28/06), 936 So.2d 209, 213. The risk that a joint tortfeasor was insolvent was borne by the solidary obligor. See former La. C.C. art. 2014.[3] The solvency or insolvency of a joint tortfeasor pertained only to a solidary obli-gor’s ability to recover contribution from the joint tortfeasor, not to the ability of a plaintiff to recover “the whole judgment” from any one solidary obligor. Id.
The sine qua non for a solidary obligor’s right to receive a “virile share credit” were that 1) the plaintiff released a party, thereby precluding the remaining solidary obli-gors from seeking contribution from it, and 2) that the released party’s liability is established at trial. Wall v. American Employers Insurance Co., 386 So.2d 79. A solidary obligor cannot benefit from a virile share credit unless both of these requirements are met.
A settlement or “compromise” under Louisiana law “is a contract whereby the parties, through concessions made by one or more of them, settle a dispute or an uncertainty concerning an obligation or other legal relationship.” La. C.C. 3071. It is well-settled that a contract is formed by the consent of the parties established through offer and acceptance. La. C.C. art. 1927. Additionally, La. C.C. art. 3072 provides “[a] compromise shall be made in writing or recited in open court, in which case the recitation shall be susceptible of being transcribed from the record of the proceedings.” As recognized by this Court, the written compromise is “valid if there is a meeting of the minds of the parties as to exactly what they intended when the compromise was reached.” Feingerts v. State Farm Mut. Auto. Ins. Co., 2012-1598 (La. App. 4 Cir. 6/26/13), 117 So.3d 1294, 1301. Thus, a compromise or settlement is valid only when the parties intend to enter into a settlement.
In the instant case, the Romanos have not settled with Johns-Manville. Therefore, Union Carbide is not entitled to a virile share credit under Louisiana’s soli-dary liability regime. Accordingly, we find no error in the trial court’s denial of Union Carbide’s motion in limine and not reducing by one-half Union Carbide’s liability because of the fault of Johns-Manville.
In its second assignment of error, Union Carbide contends that the trial court erred in allowing the plaintiffs’ medical causation expert to testify regarding unsupported hypothetical and then erred *182 in not granting a directed verdict due to the absence of any testimony to support a causation finding.
Causation is a factual issue to be determined by the fact finder. Cay v. State, DOTD, 93-0887 (La. 1/14/94), 631 So.2d 393, 398. A court of appeal may not set aside a trial court’s or a jury’s finding of fact in the absence of “manifest error” or unless it is “clearly wrong.” Rosell v. ESCO, 549 So.2d 840 (La. 1989). The issue to be resolved by a reviewing court, is not whether the trier of fact was right or Iswrong but whether the factfinder’s conclusion was a reasonable one. See Cosse v. Allen-Bradley Co., 601 So.2d 1349, 1351 (La. 1992); Housley v. Cerise, 579 So.2d 973 (La. 1991); Sistler v. Liberty Mutual Ins. Co., 558 So.2d 1106, 1112 (La. 1990).
The “standard of proof in asbestos cases, developed by Louisiana courts over years of asbestos litigation, is known as the' ‘substantial factor’ test.” “[T]he plaintiff must prove by a preponderance of the evidence that: (1) his exposure to the defendant’s asbestos product was significant; and (2) that this exposure caused or was a substantial factor in bringing about his mesothelioma (or other asbestos-related disease).” Oddo v. Asbestos Corp., Ltd., 2014-0004 (La.App. 4 Cir. 8/20/15), 173 So.3d 1192, 1202 citing Robertson v. Doug Ashy Big. Materials, Inc., 2010-1551, p. 19 (La.App. 1 Cir. 10/4/11), 77 So.3d 360, 372 (citing Rando v. Anco Insulations, Inc., 2008-1163, 2008-1169, p. 38, 16 So.3d at 1092).
In the instant case, the plaintiffs’ expert industrial hygienist, Kenneth Garza, CIH, testified that any asbestos exposure above a background level is a substantial factor in bringing about the subsequent mesothe-lioma; he defined background as .001 f/cc. Thus any exposure above .001 f/cc was a substantial factor. The plaintiffs’ pathology expert, Dr. John Maddox, confirmed the opinion that asbestos exposure above background is a substantial contributing factor to cause mesothelioma. Dr. Maddox defined background as .0002 f/cc—an order of magnitude less than Mr. Garza’a opinion of background. Wallace Borne, a former Union Carbide employee who worked in the stores department, testified that |aemployees in the stores department handled and cut asbestos gasket material with saws, knifes or box cutters multiple times per day and' the cutting process would create visible asbestos dust. Mr. Garza testified that if you can see asbestos dust, the asbestos level is 8 to 10 fibers per cubic foot—well above background level. Union Carbide’s own records show that an employee handling gaskests in the stores department was exposed to .07 f/cc levels of asbestos fibers.
Mr. Romano worked at Union Carbide’s Taft facility for 9 to 10 months. He spent 5 to 6 of those months in the stores department. Dr. Maddox testified that if Mr. Romano was exposed to visible asbestos dust at the Taft facility once a week for 6 to 8 months, those exposures would be a substantial contributing factor to cause the mesothelioma. Once a week for six to eight months is somewhere between 24 and 32 times. However, the testimony shows that Mr. Romano would have been exposed to visible asbestos dust from gaskets everyday he worked in the stores department (moré than 100 times). Dr. Maddox testified that Mr. Romano was exposed to asbestos at Union Carbide at a level ten times above the level necessary for the experts to opine that the exposure was a substantial contributing factor in causing Mr, Romano’s mesothelioma.[4] Accordingly, *183 we find no error in the trial court’s allowing Dr. Maddox’s medical causation testimony.
We will now address the assignments of error raised by Mr. and Mrs. Romano. In their first assignment of error, the Romanos contend that the jury abused its discretion in awarding general damages of only $500,000.00 for theinjuries suffered by Frank Romano, Sr. “General damages are those which are inherently speculative in nature and cannot be fixed with mathematical certainty.” Bouquet v. Wal-Mart Stores, Inc., 2008-0309 (La. 4/4/08), 979 So.2d 456, 458 citing Duncan v. Kansas City So. Rail. Co., 2000-0066, p. 13 (La. 10/30/00), 773 So.2d 670, 682; Boswell v. Roy O. Martin Lumber Co., 363 So.2d 506, 507 (La. 1978).
The standard of review applicable to a general damages award is the abuse of discretion standard. Coco v. Winston Indus., Inc., 341 So.2d 332, 335 (La. 1976). The trier of fact is afforded much discretion in assessing the facts and rendering an award because it is in the best position to evaluate witness credibility and see the evidence firsthand. Duncan, 2000-0066, p. 13, 773 So.2d at 682. An appellate court may disturb a damages award only after an articulated analysis of the facts reveals an abuse of discretion. Theriot v. Allstate Ins. Co., 625 So.2d 1337, 1340 (La. 1993), cert. denied, 510 U.S. 1114, 114 S.Ct. 1059, 127 L.Ed.2d 379 (1994).
The role of an appellate court in reviewing a general damages award is not to decide what it considers to be an appropriate award but rather to review the exercise of discretion by the trier of fact. Duncan, 2000-0066, p. 13, 773 So.2d at 682-83; Youn v. Maritime Overseas Corp., 623 So.2d 1257, 1260 (La. 1993). To determine whether the fact finder has abused its discretion, the reviewing court looks first to the facts and circumstances of the particular case. Theriot, 625 So.2d at 1340; Youn, 623 So.2d at 1261. Only if a review of the facts reveals an abuse of Indiscretion, is it appropriate for the appellate court to resort to a review of prior similar awards. Duncan, 2000-0066, p. 14, 773 So.2d at 683. In a review of the facts, the test is whether the present award is greatly disproportionate to the mass of past awards for truly similar injuries. Theriot, 625 So.2d at 1340; Reck v. Stevens, 373 So.2d 498, 501 (La. 1979). Prior awards, however, are only a guide. Theriot, 625 So.2d at 1340.
In the instant case, Mr. Romano has suffered and; will continue to suffer as a result of his contraction and the treatment of mesothelioma. Mr. Romano endured numerous invasive surgeries and other treatments in his fight against this disease. These included a PleurX catheter insertion to periodically drain fluid build-up in his lungs, undergoing a radical,pleurectomy procedure to remove part of the lining of his lung, as well as one of his ribs, enduring a radical treatment known as “hot” chemotherapy where physicians bathe the chest cavity with a very high temperature/high concentration chemotherapy agent, enduring four rounds of traditional chemotherapy, and undergoing an additional procedure following his radical pleaurectomy surgery to repair diaphragmatic herniation, where his intestinal contents herniated from the inside of his abdomen into his chest cavity. Mr. Romano also suffered from a staph infection that necessitated hospitalization for a week. Mr. Romano continued to be in pain two years following his diagnosis and his numerous surgical procedures. He will continue to have pain from these procedures and also has to live with the knowledge that there is no cure for mesothelioma. Accordingly, the facts and circumstances surrounding the injuries hi>sustained by Mr, Romano and how *184 the injuries specifically impacted him show that the jury abused its discretion in awarding general damages of only $500,000.00.
We must now resort to a review of past awards for similar injuries. In Zimko v. American Cyanamid, 2003-0658 (La.App. 4 Cir.6 /8/06), 905 So.2d 465, an Orleans Parish jury awarded damages of $2,500,000.00 on a survival action for a mesothelioma victim who filed suit against his father’s employer, his own employer, and a contractor of his employer alleging negligence, strict premises liability, fraud and intentional acts leading to household, bystander, and occupational exposure to asbestos. The appellate court upheld the verdict against the premises owner.
In Faulkner v. McCarty, 2002-1337 (La. App. 4 Cir. 6/11/03), 853 So.2d 24, this Court upheld a $2,300,000.00 verdict in a case involving death from mesothelioma. In Faulkner, the plaintiff, a longshoreman, filed suit against asbestos manufacturers, the Board of Commissioners for the Port of New Orleans and others. Mr. Faulkner died on August 21, 1998, from malignant mesothelioma as a result of asbestos exposure. Mr. Faulkner’s son was substituted in the survival action and asserted a wrongful death claim as well.
In Torrejon v. Mobil Oil Co., 2003-1426 (La.App. 4 Cir. 6/2/04), 876 So.2d 877, an Orleans Parish judge granted the plaintiffs motion for JNOV and awarded general and special damages of $1,800,000 for the plaintiffs decedent (a former merchant mariner) who had contracted mesothelioma after the jury had returned a verdict for the defendant.
In Chaisson v. Avondale Industries, Inc., 2005-1511 (La.App. 4 Cir. 12/20/06), 947 So.2d 171, a pipe-fitter and his daughter sued his former employer seeking damages based on his wife’s contraction of mesothelioma as the result of take-home exposure. The appellate court affirmed the Orleans Parish jury award of $1,416,580.54 in survival damages.
Based on the evidence put on at trial, Mr. Romano, like most of the individuals who contracted mesothelioma in the aforementioned cases, will most likely die from the reoccurrence of his mesothelioma. Considering that fact in combination with our review of the other cases, a general damages award of only $500,000.00 appears far too low. Our review of the other cases indicates that Mr. Romano’s general damages award should be somewhere in the $1.5 million to $2 million range. Since we are instructed by jurisprudence that we should only raise a general damage award to the lowest reasonable amount that a trier of fact could have awarded, we will raise the amount of general damages awarded to the plaintiffs from $500,000.00 to $1,500,000.00.
Due to the position we have taken above it is also evident that the trial court erred in not granting the plaintiffs’ motion for a partial judgment notwithstanding the verdict on the issue of damages only, or, in the alternative motion for partial new trial on damages only. The standard for granting or denying a judgment notwithstanding the verdict is whether reasonable minds could differ. Scott v. Hosp. Service Dist. No 1 of St. Charles Parish, 496 So.2d 270, 273-274 (La. 1986). The motion should be granted when the facts and inferences point so strongly and | uoverwhelmingly in favor of one party that reasonable jurors could not arrive at a contrary verdict. Id.; See also Joseph v. Broussard Mill, Inc., 2000-628 (La. 10/30/00), 772 So.2d 94; Torrejon v. Mobil Oil Co., 2003-1426 pp. 7-8 (La.App. 4 Cir. 6/2/04), 876 So.2d 877, 884. Likewise, a new trial must be granted when the verdict or *185 judgment appears clearly contrary to the law and evidence. La. C.C.P. art. 1972(1).
CONCLUSION
For the above and foregoing reasons, we affirm the jury and trial court’s decisions regarding liability and causation. However, we reverse the jury’s verdict as to damages only and the trial court’s judgment denying plaintiffs’ motion for partial judgment notwithstanding the verdict on damages only, or, in the alternative, motion for new trial on damages only. Accordingly, we now increase the general damages award made to Mr. and Mrs. Romano from $500.000.00 to $1,500,000.00.
AFFIRMED IN PART, REVERSED IN PART AND RENDERED

. The Romanos later amended their lawsuit to add two additional defendants.

. Unlike the plaintiff in Abadie, Mr. and Mrs. Romano neither settled with nor made a claim against nor received payment from Johns-Manville.

. Former Louisiana Civil Code Article 2014 stated: “If one of the codebtors in solido pays the whole debt, he can claim from the others no more than the part and portion of each. If one of them be insolvent, the loss occasioned by his insolvency must be equally shared amongst all the other solvent codebtors and him who has made the payment.”

. Prior to trial, Union Carbide had retained its own medical pathology expert,. Dr. Thomas Wheeler. However, it chose not to call him at trial,