677 So.2d 635 (1996)
Larry GREEN, Plaintiff-Appellant,
v.
CLAIBORNE ELECTRIC COOPERATIVE, INC., Defendant-Appellee.
No. 28408-CA.
Court of Appeal of Louisiana, Second Circuit.
June 26, 1996.
Rehearing Denied August 15, 1996.
*636 Sockrider, Bolin & Anglin by James E. Bolin, Jr., for Plaintiff-Appellant.
Lunn, Irion, Johnson & Carlisle by Brian D. Smith, for Defendant-Appellee.
Peatross, Greer & Frazier by John M. Frazier, for Intervenor.
Before SEXTON, WILLIAMS and STEWART, JJ.
SEXTON, Judge.
Plaintiff, Larry Green, appeals an adverse judgment resulting from a jury verdict that found no fault on the part of the defendant, Claiborne Electric Cooperative, Inc., ("Claiborne Electric") and its insurer, Federated Rural Electric Insurance Corporation, for injuries *637 sustained by Green when he made contact with an energized electrical wire while "top riding" a house being moved to rural property near Mt. Olive, Louisiana. Green sustained additional injuries when he fell from the house after being knocked unconscious by the electrical shock. We affirm.
On May 13, 1991, Dale Hensley, the owner and manager of the house moving business that employed the plaintiff, called William Kyle of Claiborne Electric to inform him that he was moving a house the next day and that he needed his clearance to obtain a permit from the state Department of Transportation and Development (DOTD) to make the move. The final leg of the move would take the house into an area served by Claiborne Electric. Hensley told Kyle that he had measured the height of all of the wires on the route and that the house would clear all energized electrical lines. Hensley reported the height of his load at 17'10"'.[1] Kyle, following the usual practice of his company for house moves, gave clearance to the DOTD district office in Monroe for the move. He also offered to provide Hensley with the assistance of a Claiborne Electric employee. Hensley declined, and Kyle told Hensley to call if he needed assistance.
The plaintiff, Larry Green, was a "top rider" employed by Hensley. A top rider rides atop the house while it is being moved in order to lift wires and cut tree limbs that obstruct the path of the house during the move. According to the testimony of Hensley, only telephone wires, cable television wires, and insulated electrical lines are lifted by hand. Sometimes uninsulated "neutral" electrical lines are lifted by hand, but Hensley did not approve of the practice. Energized uninsulated electrical lines are lifted only by using "hot sticks," which are insulated fiberglass extendable rods. Although Hensley had hot sticks in his truck at the time, they were not being used when the accident occurred.
Green's injuries occurred as the house was being moved under three wires onto the property site of its final destination. The height of the wires were measured after the accident at 12'3"' for the cable TV wire; 15'1" for the neutral wire; and, 18'9" for the energized electrical wire. The height of the house was also measured at that time at 18'7", some 9" higher than reported by Mr. Hensley.
Mr. Green does not recall the events that led to the accident. His last memory is of holding the cable television and neutral wire in his right hand. While he had an insulated lineman glove on his right hand, he only had a leather work-glove on his left hand. The medical records indicate that the electricity entered the left index finger of Green's left hand and came out of his left calf, causing electrical burns to 21% of his body surface. These medical records state that Green reached to move a high line and was shocked and subsequently fell from the roof of the house.
Green raises four assignments of error:
(1) The jury erred in finding that Claiborne Electric Cooperative, Inc. was not at fault.
(2) The district court erred in denying the admissibility of evidence about Claiborne Electric's conduct after the accident.
(3) The district court erred in allowing unduly prejudicial testimony by O.T. Pace.
(4) The district court erred in allowing the jury to consider the fault of plaintiff's employer. Instead, only the fault of plaintiff and Claiborne Electric should have been considered.
The issue raised by appellant's first assignment of error is whether Claiborne Electric discharged its duty to exercise reasonable care to prevent the risk of harm that befell the plaintiff. Appellant relies primarily on the supreme court case of Levi v. Southwest Louisiana Electric Membership Cooperative (SLEMCO), 542 So.2d 1081 (La. 1989) and this court's opinion in Weaver v. Valley Electric Membership Corp., 615 So.2d 1375 (La.App.2d Cir.1993).
*638 In Levi, an oil field roustabout was severely injured by electrical shock while attempting to repair his well servicing truck that was parked on a road near a well that was 40.5 feet from a 14,400 volt electric distribution line. The electrical line was suspended 25.7 feet above the road. Levi was injured when he raised the 34 foot mast of the rig and it came into contact, or near contact, with the electrical line, causing the electricity to travel through the rig and injure Levi. Reversing the trial court and appellate court, the supreme court held that the power company, which knew that the well service rigs would be operating in the area and had taken care to place its lines out of reach of these rigs from all of the other wells in the area except this one, breached its duty to take precautions against the risk that resulted in the injuries sustained by the plaintiff in that case.
In Weaver, supra, a farm laborer, James Weaver, sustained electrical shock injuries when he somehow contacted or grasped an energized electrical wire after climbing atop a 15'9" cotton picker in an attempt to disentangle a lower neutral wire that had snagged the picker. The trial court found that the defendant power company was negligent, but that its negligence was not a legal cause of the accident. We reversed the trial court and rendered judgment allocating fault and awarding damages.
Our reversal was based upon several factors, but particularly the fact that the defendant power company, VEMCO, knew that the cotton picker would be operating underneath the power lines and that its height would bring it into contact with the lower neutral lines. This knowledge was based upon the fact that it had escorted the cotton picker to the field and knew that it would be operating near the power lines in the area.
Similar to Levi and Weaver, Claiborne Electric knew that the house being moved would traverse under its power lines. Mr. Hensley called Mr. Kyle and informed him of the route. However, Mr. Hensley incorrectly told Mr. Kyle that the height of the load was 17'10". Unlike the facts in Levi and Weaver, where the power company had knowledge that the equipment traversing under or near the power lines would come into contact with their lines, the house being moved by Hensley should have easily cleared the energized line by 9" based upon Hensley's measurements. Thus, Claiborne Electric did not have accurate knowledge of the height of the house. Nevertheless, Mr. Kyle offered the assistance of an escort, and Mr. Hensley was aware that he could obtain assistance from the power company if he needed it. Thus, the crux of the issue is whether Claiborne Electric was under a duty to take its own measurements or to send an escort under these circumstances in anticipation of negligence on the part of the mover or his employees.
While a power company, which is held to the standard of a reasonable person with superior attributes, is required to realize that there will be a certain amount of negligence that must be anticipated, we also note that those who engage in certain activities or come into certain relationships with people or things are under a peculiar obligation to acquire knowledge and experience about that activity, person or thing. Levi, supra at 1084-1086. The plaintiff, as well as his employer, had worked in the house moving business for several years. Much of what constitutes the essence of house-moving involves knowledge and expertise of transporting houses under power lines. Unlike the plaintiffs in Levi and Weaver, whose jobs brought them in contact with electrical wires only incidentally, the plaintiff in the instant case was a "top-rider" whose specific job was to maneuver through and lift wires that would obstruct the path of the house. Both the plaintiff and his employer were well aware of the danger posed by energized electrical lines and were well aware of the precautions and procedures to take to avoid electrical shock. They had in their possession the safety equipment that would have avoided the accident, but failed to use it. They also had at their disposal the assistance of the defendant power company, but declined it.
In view of these facts, we cannot say that the jury was clearly wrong in finding that Claiborne Electric was not at fault for the injuries sustained by the plaintiff.
*639 Plaintiff's second assignment of error alleges that the district court erred in denying the admissibility of evidence about Claiborne Electric's conduct after the accident.
Subsequent to the above accident, Claiborne Electric changed its policy to require that it provide an escort and assistance on all houses being moved through its service area. Under the well-known "subsequent remedial measures" rule, this evidence is inadmissible to show negligence or culpability. An exception to the rule is permitted when it is introduced for another purpose, such as knowledge, feasibility of precautionary measures, or for attacking credibility. LSA-Code of Evidence Art. 407. Plaintiff claims it should have been admitted to show Claiborne Electric's knowledge, to question the credibility of its witnesses, and to show the feasibility of precautionary measures.
Defendant correctly points out, however, that the inquiry does not end here. As the trial court stated, if the probative value of the evidence is outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, then it is inadmissible although relevant. LSA-Code of Evidence Art. 403. This assignment is without merit.
In his third assignment of error, the plaintiff alleges that the district court erred in allowing unduly prejudicial testimony by O.T. Pace. O.T. Pace sold his house moving business to Dale Hensley, the plaintiff's employer, roughly four years prior to the accident. Plaintiff worked for Pace for a number of years prior to the sale. Pace testified that on two to four occasions in the last two years before the sale to Hensley, the plaintiff had walked between the energized and neutral lines on top of the house during house moves, in violation of Pace's instructions. Pace admonished Green for such unsafe work practice after those incidents, and Green allegedly promised he would not do it again.
Plaintiff contends that this evidence is of little probative value because it was four to six years before the accident in question and because it was highly prejudicial to the plaintiff's case. Defendant contends that the testimony impeached the plaintiff on the critical issue of where he was located when he was electrically shocked. Defendant also contends the plaintiff practiced unsafe work practices and this evidence was used to impeach his credibility.
A trial judge's assessment of the probative value of evidence is afforded great weight. Laing v. American Honda Motor Co., Inc., 25159-CA (La.App.2d Cir. 12/1/94), 628 So.2d 196, writ denied, 94-0375 (La.3/25/94), 635 So.2d 239. In the absence of a clear abuse of discretion in assessing the probative value of evidence, the ruling of the trial court will not be reversed on appeal. Bourgeois v. McDonald, 622 So.2d 684 (La. App. 4th Cir.1993), writ denied, 629 So.2d 1177 (La.1993).
We find no abuse of discretion in this instance. The probative value of the testimony of Mr. Pace regarding unsafe practices of the plaintiff regarding incidents that occurred several years earlier, while affecting the weight to be afforded the evidence, is not rendered inadmissible due to unfair prejudice in this instance. This assignment is without merit.
Finally, the plaintiff contends that the district court erred in allowing the jury to consider the fault of the plaintiff's employer. Plaintiff contends this court should conduct a de novo review of the case on grounds that the trial court erroneously allowed the jury to consider the fault of plaintiff's employer, Dale Hensley House Movers. The jury verdict form, which consisted of five interrogatories, is attached as an Appendix to this opinion.
Recently, in Cavalier v. Cain's Hydrostatic Testing, Inc., 94-1496 (La. 6/30/95), 657 So.2d 975 (La.1995), the supreme court revisited its earlier decision in Gauthier v. O'Brien, 618 So.2d 825 (La.1993) which had held that quantification of employer fault is suggested by LSA-C.C.P. art. 1812C and mandated by LSA-Civil Code art. 2324B. Plaintiff submits that Cavalier overrules Gauthier and holds that quantification of employer fault is inappropriate requiring this court to conduct a de novo review.
Because the jury never reached the question of employer fault, we find no merit in *640 plaintiff's argument. The jury found no fault on the part of Claiborne Electric and proceeded no further in the verdict form. Had the jury found any fault on the part of Claiborne Electric, thereby requiring quantification of its percentage of fault, our analysis would be different.
For these reasons, the judgment of the trial court is affirmed at plaintiff's cost.
AFFIRMED.
*641 
*642 

*643 APPLICATION FOR REHEARING
Before SEXTON, NORRIS, WILLIAMS, STEWART and CARAWAY, JJ.
Rehearing denied.
NOTES
[1] Hensley testified that clearance from the utility company is not usually required to obtain a permit from the DOTD district office if the height of the load to be moved is under 18 feet.