JERRY R. BAGWELL         \*      NO. 2019-CA-0414

VERSUS                  \*

                               **COURT OF APPEAL**

UNION CARBIDE         \*

CORPORATION, ET AL.      **FOURTH CIRCUIT**

                            \*

                               **STATE OF LOUISIANA**

              \* \* \* \* \* \* \*

APPEAL FROM
CIVIL DISTRICT COURT, ORLEANS PARISH
NO. 2015-10146, DIVISION "G-11"
Honorable Robin M. Giarrusso, Judge
\* \* \* \* \* \*
**Judge Edwin A. Lombard**
\* \* \* \* \* \*
(Court composed of Judge Edwin A. Lombard, Judge Sandra Cabrina Jenkins,
Judge Regina Bartholomew-Woods)

Mickey P. Landry
Frank J. Swarr
Philip C. Hoffman
Matthew C. Clark
LANDRY & SWARR LLC
1010 Common Street, Suite 2050
New Orleans, LA 70112
-AND-
Jeffrey A. O'Connell
Ryan P. Phillips
THE NEMEROFF LAW FIRM
12720 Hillcrest Road, Suite 700
Dallas, TX 75230

       COUNSEL FOR PLAINTIFFS/APPELLANTS

McGready L. Richeson
David M. Stein
PUGH ACCARDO HAAS RADECKER & CAREY, LLC
1100 Poydras Street, Suite 3300
New Orleans, LA 70163

       COUNSEL FOR MONTELLO, INC.

                                   **DECEMBER 11, 2019**

Michael McAlpine, ESQ.
Richard Cozad, ESQ.
Jeff D. Peuler, ESQ.
Morgan Kelley, ESQ.
SCHOUEST BAMDAS SOSHEA AND BENMAIER, PLLC
365 Canal Street, Suite 2730
New Orleans, LA 70130
-AND-
John C. Elliott, ESQ
SCHOUEST BAMDAS SOSHEA & BENMAIER, PLLC
1001 McKinney Street, Suite 1400
Houston, TX 77002

      COUNSEL FOR RMC HOLDINGS, LLC

Kelly Brechetel Becker, Appeal Counsel
Kathryn Z. Gonski
Katherine Seegers Roth
LISKOW & LEWIS
701 Poydras Street, Suite 5000
New Orleans, LA 70139-5099
-AND-
McGready L.  Richeson
Ernest G. Foundas
Milele St. Julien
Francis X. deBlanc
David M. Stein
Kathleen E. Jordan
PUGH ACCARDO HAAS RADECKER & CAREY, LLC
1100 Poydras Street, Suite 3300
New Orleans, LA 70163

      COUNSEL FOR UNION CARBIDE CORPORATION

**AFFIRMED IN PART;
REVERSED IN PART
AND RENDERED**

In this mesothelioma case, the widow of Jerry R. Bagwell, Tawanah Lee Bagwell, and his son, Jerrod Clinton Bagwell, seek review of the November 27, 2018 judgment of the trial court that was partially entered in conformity with a jury verdict. The Appellants also seek review of a February 19, 2019 judgment, denying their motion for a judgment notwithstanding verdict, or in the alternative, motion for new trial.

Finding that the jury erred in awarding general damages of only $750,000 for the survival action of Mr. Bagwell and the trial court erred in denying the judgment notwithstanding verdict, or in the alternative, motion for new trial, solely on the issue of damages, we reverse in part the November 27, 2018 and February 19, 2019 judgments of the trial court as to damages only. We hereby increase the damages award from $1,265,000 to $1,498,333.34, for reasons discussed more fully below. In all other respects, we affirm the November 27, 2018 and February 19, 2019 judgments of the trial court.

1

**Facts and Procedural History**

As a youth growing up in Ragland, Alabama, Mr. Bagwell's father worked as a lathe operator for the Cement Asbestos Products Company ("CAPCO") at an amphibole asbestos cement pipe plant from the 1960s to the early 1970s. Mr. Bagwell's testimony indicates that he grew-up within a one to seven mile distance from the CAPCO plant.

Mr. Bagwell relocated to Louisiana at the age of 19 to work on oil rigs, becoming an employee of defendant Two "R" or RMC Holdings, Inc. ("RMC") in 1978. RMC drilled oil and gas wells in shallow bays, deltas, and marsh canals in Louisiana. Mr. Bagwell testified that he began his career for RMC as a floorhand, or "roughneck", but eventually worked his way up to being a driller. During his RMC career, he testified that he handled three asbestos-mud drilling additives: Visbestos, SuperVisbestos, and Flosal.[1] Visbestos and SuperVisbestos are chrysotile asbestos products that were manufactured by UCC and distributed by Montello.

Mr. Bagwell recounted working in the dusty conditions of the mud house where he was responsible for dumping these additives, when needed, into a hopper. He further explained that he was responsible for dry sweeping the mud house; laundering the dusty clothes of his co-workers and handling asbestos-welding blankets to assist welders contracted by RMC.

Mr. Bagwell left RMC in 1986 and eventually returned to Alabama, where he became an aerospace welder. He testified that he later became physically incapable of performing his job and was having trouble breathing. Consequently, he presented for treatment at a local hospital, where he was hospitalized for a few

---

[1] This testimony, however, was contested at trial as more fully discussed below.

days for his lungs to be drained. He was then diagnosed with mesothelioma at the age of 57 by Dr. Rohit Patel.  Following nearly three years of numerous surgeries, biopsies and chemotherapy cycles, Mr. Bagwell died at the age of 60 in February 2018.

Prior to his death, in 2015, Mr. Bagwell sued several defendants, alleging that their asbestos products and/or activities caused his asbestos exposure and ultimately his mesothelioma diagnosis. The Appellants sought survival and wrongful death claims.

At the time of the trial, however, only three defendants remained: RMC, UCC and Montello.  During a three-week long jury trial, over twenty witnesses testified at trial, including the Appellants. Mr. Bagwell's video deposition was shown to the jury. The testimony of Mr. Bagwell's treating physicians, including that of Dr. Patel, were introduced at trial. The following experts for the Appellants testified:  industrial hygienist Susan Raterman; Dr. William Longo, an expert in material science; Dr. Richard Kradin, a medical expert, and Dr. Richard Lemen, an epidemiologist and retired Assistant Surgeon General.

The Appellees presented the testimony of Paul Green, a RMC employee who briefly supervised Mr. Bagwell, as well as Joey Bagwell, the brother of the decedent. Additionally, pathologist Dr. Victor Roggli, and Michael Donovan, a petroleum geologist, also testified for the Appellees. The jury was ultimately presented with determining whether it was Mr. Bagwell's exposure to chrysotile asbestos, used in UCC and Montello's Calidria fiber products, and/or amphibole asbestos products produced by CAPCO that caused Mr. Bagwell's mesothelioma. At the conclusion of the trial, the jury rendered a verdict in favor of the Appellants

3

against defendant RMC Holdings, which the jury found was 75% at fault.[2] Non-party CAPCO was found 25% at fault. Moreover, the jury found in favor of defendants UCC and Montello, determining that they were not at fault.

The jury awarded Mr. Bagwell $1,765,000 in survival damages, consisting of $750,000 in general damages; $630,000 in past medical expenses, and $385,000 in lost wages, past and future. Reducing the jury's award as a result of previously dismissing all non-pecuniary claims against RMC with prejudice,[3] the district court awarded $1,265,000 for Mr. Bagwell's claims, excluding $500,000 in general damages awards for physical disability and loss of enjoyment of life, combined. While the jury also awarded sums to the Appellants for loss of love and affection and loss of society and mental anguish, these sums were unrecoverable against RMC.

The Appellants moved for a judgment notwithstanding verdict or in the alternative, a motion for new trial, which the trial court denied. This timely appeal followed.

The Appellants raise seven assignments of error on appeal:

1. The trial court erred when it denied the Appellants' judgment notwithstanding verdict where the evidence was sufficient to sustain a finding of liability against

---

[2] The Appellants objected to the form of special verdict interrogatory number one, which grouped non-party CAPCO with the three party defendants in response to an interrogatory asking if jurors found by a preponderance of the evidence that Mr. Bagwell "contracted mesothelioma as a result of exposure to asbestos" from their products and/or activities, and "that such exposure was a substantial contributing cause of his mesothelioma." The trial court overruled their objection. However, in *Bagwell v. Union Carbide Corp.*, 18-1838 (La. 11/12/18), 256 So. 3d 278, this Court granted the Appellants' writ application and reversed the trial court. Consequently, both the party defendants and all non-parties were listed together in response to interrogatory number 1.

[3] Prior to trial, RMC filed an unopposed motion for summary judgment asking the district court to dismiss the Appellants' claims for punitive, exemplary and non-pecuniary damages against it with prejudice. The district court granted the motion. Moreover, during the trial, RMC moved for directed verdict against the wrongful death and non-pecuniary damages. The district court granted the motion.

UCC and Montello for their role in causing Mr. Bagwell's mesothelioma and death;

2. The trial court erred when it entered final judgment on inconsistent answers to interrogatories, and when it denied Appellants' motion for new trial where the jury's verdict was clearly contrary to the law and evidence;

3. The trial court erred when it allowed all manner of highly prejudicial argument and testimony as to the bankrupt status of CAPCO;

4. The trial court erred when it permitted testimony from defense expert Dr. Roggli, that he was formerly a plaintiffs' expert, but became a defense expert after amphibole defendants (such as CAPCO) went bankrupt and asbestos companies like UCC and Montello were financially targeted for exposures to their chrysotile asbestos;

5. The trial court erred when it instructed the jury to disregard a critical portion of Appellants' closing argument, which sought to rebut the defense assertion that Mr. Bagwell's testimony about his exposure to Visbestos and SuperVisbestos was contrived because of CAPCO's inability to pay;

6. The trial court erred by refusing to give an instruction on causation that above background, non-trivial exposures to asbestos are to be considered significant and substantial contributing factors in causing mesothelioma;

7. The trial court erred in denying Appellants' judgment notwithstanding verdict, or alternative motion for new trial, on the low damages the jury awarded for Mr. Bagwell's survival action.

**Montello and UCC**

The Appellants first two assignments of error focus on the jury's finding of no fault on the part of UCC and Montello. The Appellants maintain that their judgment notwithstanding verdict should have been granted because they presented

5

sufficient evidence to sustain the liability of these Appellees for causing Mr. Bagwell's death.  Additionally, they assert that the jury's answers to the special interrogatories were inconsistent because RMC was found at fault, but not the manufacturers of the asbestos products to which he was allegedly exposed while working on the rigs of RMC.

### Denial of the Judgment Notwithstanding Verdict as to Causation

On appeal, appellate courts apply a two-part inquiry in reviewing a judgment notwithstanding verdict. *Skillman v. Riverside Baptist Church of Jefferson Parish*, 14-727, p. 17 (La. App. 5 Cir. 5/28/15), 171 So.3d 407, 419.  Appellate courts first apply the same standard as the trial court, considering whether the facts and inferences point so strongly and overwhelmingly in favor of the moving party that reasonable persons could not arrive at a contrary verdict. *Id*. After determining whether the trial court correctly applied the standard of review as to the jury verdict, the appellate court reviews the judgment notwithstanding verdict using the manifest error standard of review. *Id.*

In light of the conflicting testimony and evidence presented at trial, the Appellants' assertion that the facts and inferences point overwhelmingly in their favor is flawed. Mr. Bagwell's testimony tied Visbestos and SuperVisbestos to RMC rigs.  His testimony was further buttressed by the testimony of industrial hygienist Susan Raterman; William Longo Ph.D.; Richard Lemen, Ph.D.; and Richard Kradin, M.D.

Ms. Raterman testified that Mr. Bagwell's exposures to Visbestos and SuperVisbestos would have been significant and increased his risk of disease. Dr. Longo opined that the asbestos products at issue were 98% and 96% chrysotile

6

asbestos. He further opined that Mr. Bagwell experienced exposures to these products in excess of background levels based upon his review of the evidence adduced and real-world and work-practice studies. Dr. Kradin testified that Mr. Bagwell's exposures would have been thousands of times above background, and were a medical and scientific cause of his disease. Lastly, Dr. Lemen, an epidemiologist and retired Assistant Attorney General, testified that chrysotile asbestos, including Visbestos and SuperVisbestos, is capable of causing mesothelioma in humans.

In contrast, the Appellees presented the testimony of several witnesses, contradicting that Visbestos and SuperVistbestos could cause mesothelioma and the assertion that these products were even present on RMC's rigs.

Mr. Bagwell's former supervisor, Mr. Green, testified that he was a RMC employee from 1976 to 1993, and had no recollection of the aforementioned drilling additives being in use.

Mr. Donovan, a petroleum geologist, further testified that his research showed that none of those additives were shipped to Louisiana during the time that Mr. Bagwell was a RMC employee. Mr. Donovan explained that the last shipment of Visbestos was made to Louisiana prior to Mr. Bagwell's employment with RMC. He related that he found that 350,000 sacks of materials were used on RMC wells drilled from 1978 to 1986, but none of those sacks were of Visbestos or SuperVisbestos. Mr. Donovan testified that based upon his review of various drilling records, RMC drilled 198 wells from August 1978 to 1986. He determined that in the area where Mr. Bagwell was working in southern Louisiana inland waters, zero sacks of Visbestos or SuperVisbestos were used on the rigs on which

he worked. He further testified that most drilling-mud additives do not contain asbestos.

Interestingly, Dr. Patel, the physician who diagnosed Mr. Bagwell with malignant mesothelioma, testified that Mr. Bagwell informed him that he was exposed to asbestos as a result of his father's work. He explained that according to his notes, Mr. Bagwell stated that he was heavily exposed to asbestos while with his father. Moreover, Dr. Patel testified that he knew of no other heavy exposure Mr. Bagwell had to asbestos aside from his father's work. Dr. Patel testified that he believed Mr. Bagwell's exposure to asbestos came from his father's work.

Additionally, Dr. Roggli opined that the unique characteristics of UCC's calidria chrysotile asbestos was unlikely to cause mesothelioma, as opposed to other forms of chrysotile asbestos due to its short fiber form. Consequently, he testified that it is doubtful that if Mr. Bagwell worked with either Visbestos or SuperVisbestos that such exposure would cause mesothelioma in his expert opinion. He concluded instead that Mr. Bagwell would have been environmentally exposed to crocidiolite—a type of amphibole asbestos that is long fiber in form—above background as a result of living in the home with his father.

This conflicting testimony was sufficient enough to create doubt for the jury as to whether Visbestos and SuperVisbestos were the source of Mr. Bagwell's asbestos exposure, as these products may not have been in use and/or supplied to the RMC rigs upon which Mr. Bagwell worked. Additionally, Mr. Bagwell testified to not being provided with warnings about asbestos exposure by RMC, and further that he was exposed to asbestos by other sources, such as welding blankets, while in RMC's employ. Where there is conflicting testimony, the trial court's reasonable evaluations of credibility and inferences of fact should not be

disturbed upon review. *Rosell v. ESCO*, 549 So.2d 840, 844 (La. 1989). When two permissible views of the evidence exist, the fact finder's choice cannot be clearly wrong or manifestly erroneous. *Menard v. Lafayette Ins*. Co., 09-1869, p. 15 (La. 3/16/10), 31 So.3d 996, 1007.

While another trier of fact may have found Mr. Bagwell and his experts to be more credible witnesses, the jury had a reasonable basis for reaching the conclusion that UCC and Montello were not at fault. Thus, we do not find that the facts and inferences pointed overwhelmingly in the Appellants' favor that reasonable persons could not arrive at a contrary verdict. This assignment of error is without merit.

### Conflicting Jury Responses to Interrogatories

The Appellants aver that the jury returned irreconcilable answers to the special interrogatories presented based upon the jurors finding RMC 75% at fault for Mr. Bagwell's exposure, but failing to find any liability for the asbestos products of UCC and Montello, which they allege he was exposed to while working for RMC. The Appellants' maintain that "a crucial component of the verdict was a finding of exposure for a drilling mud manufacturer." Thus, the Appellants maintain that the jury disregarded the interrogatory instructions by answering interrogatory number 4, but did not answer any remaining interrogatories to indicate a finding of liability as to any of the manufacturers who produced and distributed the asbestos mud drilling additives.

When answers to jury interrogatories are inconsistent, the court shall not direct the entry of judgment, but may return the jury for further consideration or may order a new trial. *Stevens v. Scottsdale Ins. Co*., 95-2347, p. 3 (La. App. 4 Cir.

9

3/27/96), 672 So.2d 1031, 1033 (citing La. Code Civ. Proc. art. 1813(E); *Ferrell v. Fireman's Fund Insurance Co.*, 94-1252, p. 7 (La. 2/20/95), 650 So.2d 742, 747).

The record in this matter, however, does not reveal inconsistent answers, rather a rejection of the Appellants' assertion that the products of UCC and Montello were a substantial factor in causing Mr. Bagwell's mesothelioma.

In response to Interrogatory 1, the jury indicated that it found Mr. Bagwell "contracted mesothelioma as a result of exposure to asbestos from the products/activities" of *CAPCO* and *RMC*, and that "such exposure was a substantial contributing cause of his mesothelioma." The jury was presented with a choice of 11 entities total, including Montello and UCC, in response to Interrogatory 1.

Similarly, the instructions for Interrogatory 4 stated "Do you find, by a preponderance of the evidence, that the following companies were negligent, and that such negligence was a substantial contributing cause of Jerry R. Bagwell's injuries? (Please respond only as to those companies you answered "Yes" to on question No. 1.) The jury again entered "yes" answers for CAPCO and RMC, but responded "no" for all remaining entities.[4]

Moreover, from Interrogatory 6 through Interrogatory 9, the jurors were asked, respectively, to identify which company(s) asbestos products were: 1) unreasonably dangerous *per se*; 2) unreasonably dangerous due to a failure to warn or failure to adequately warn, and that failure was a substantial contributing cause of Mr. Bagwell's mesothelioma; 3) defective in construction or composition, and that defect was a substantial contributing cause of Mr. Bagwell's mesothelioma;

---

[4] While the jury technically did not comply with the instructions of Interrogatory 4, by responding "no" to the remaining entities, these responses were nevertheless consistent with its responses to Interrogatory 1.

and 4) unreasonably dangerous due to a defective design and that defect was a substantial contributing cause of Mr. Bagwell's mesothelioma. The sole company identified by the jury in response to each of these interrogatories was CAPCO.

The jury was consistent in determining that only CAPCO and RMC's products and/or activities were substantial contributing causes of Mr. Bagwell's death; that both entities were negligent; and, their negligence was a substantial contributing cause of Mr. Bagwell's death.

Article 1972 of the Louisiana Code of Civil Procedure provides, in pertinent part, that a new trial shall be granted where the verdict or judgment appears clearly contrary to law and evidence. A new trial may also be granted "in any case if there is good ground therefore, except as otherwise provided by law." La. Code Civ. Proc. art. 1973. A trial judge has broad discretion in the granting or denying of a motion for new trial. *Jackson v. Bally's Louisiana, Inc*., 09-1574, p. 4 (La. App. 4 Cir. 4/7/10), 36 So.3d 1001, 1004. Appellate courts review a ruling on a motion for new trial under the abuse of discretion standard *Id*. (citing *Campbell v. Tork,* 03-1341, p. 4 (La. 2/20/04), 870 So.2d 968, 971).

In the instant matter, the jurors' responses to the special interrogatories do not reflect confusion and/or inconsistency. Testimony was adduced at trial that Mr. Bagwell was exposed to asbestos materials other than the alleged Visbestos and SuperVisbestos, while working for RMC, and further that Visbestos and SuperVisbestos may not have been aboard the rigs where Mr. Bagwell worked, giving the jury a reasonable basis to conclude that there was another source of Mr. Bagwell's exposure. For these reasons, we find that the trial court did not err in denying the Appellants' motion for new trial. This assignment of error is without merit.

**Erroneous Evidentiary Rulings**

In assignments of error three through six, the Appellants maintain that the trial court made four erroneous rulings:

- permitting prejudicial argument and testimony as to CAPCO's bankruptcy status;

- allowing defense expert Dr. Roggli to testify as to how he became a defense expert "after amphibole defendants (such as CAPCO) went bankrupt and asbestos companies like UCC and Montello were financially targeted for exposures to their chrysotile asbestos;"

- instructing the jury to disregard a portion of the Appellants' closing argument, aimed at rebutting the Appellees' claim that Mr. Bagwell's testimony about his alleged Visbestos and SuperVisbestos exposure was contrived because of CAPCO's inability to pay; and,

- failing to give a jury instruction that "above background, non-trivial exposures to asbestos are to be considered significant and substantial contributing factors in causing mesothelioma."

Rulings of a trial court pertaining to the relevancy of evidence as well as to the probative value of evidence are reviewed under an abuse of discretion standard. *Palmer v. UV Ins. Risk Retention Grp., Inc.*, 18-404, pp. 11-12 (La. App. 5 Cir. 12/19/18), 262 So.3d 1006, 1015, *writ denied,* 19-0107 (La. 4/29/19), 268 So.3d 284. "The trial court is vested with wide discretion in determining the relevancy of evidence." *Id.* (citing *Hooker v. Super Products Corp.*, 98-1107, p. 37 (La. App. 5 Cir. 6/30/99), 751 So.2d 889, 909). "Likewise, the trial court's assessment of the probative value of evidence is afforded great weight." *Id.* (citing *Green v. Claiborne Elec. Co-op, Inc.*, 28,408, p. 7 (La. App. 2 Cir. 6/26/96), 677 So.2d 635, 639).

**CAPCO's Insolvency**

Maintaining the Appellees wanted the insolvency of CAPCO on the record in order to inform the jury about CAPCO's ability to pay, the Appellants aver that

it was prejudicial for the trial court to permit argument and testimony on CAPCO's bankruptcy status. The trial court's errors, they aver, impeached the jury's fact finding because it erroneously allowed the non-party CAPCO's financial status to become a major issue before the jury and a theme of the Appellees' defense.

Despite their objections, the Appellants maintain the trial court admitted Mr. Bagwell's testimony that he learned CAPCO was bankrupt after he was diagnosed with mesothelioma. The Court further permitted references to CAPCO's bankruptcy and inability to pay during opening statements, examination of witnesses, and closing arguments.

The Appellants maintain that a new trial is warranted because any probative value of this evidence was vastly outweighed by considerations of unfair prejudice and misleading the jury and should have been excluded under La. Code Evid. art. 403. They further assert that under the virile share regime, their recovery on the survival action was insusceptible to reduction due to CAPCO's fault. Thus, they aver CAPCO's insolvency should not have played a role in the jury's evaluation of liability and damages in this case. The Appellees contend they wanted the evidence of CAPCO's insolvency introduced to show Mr. Bagwell only pursued other defendants because he was aware he could not pursue CAPCO.

The Appellants have failed to establish that they were prejudiced by the introduction of evidence and testimony as to CAPCO's bankruptcy status, especially considering that the jurors had a reasonable basis for assigning CAPCO *more* fault based on the medical and expert testimony of Dr. Patel and other treating physicians, indicating CAPCO was the sole source of Mr. Bagwell's asbestos exposure.

Additionally, as the Appellees point out, the jury's determination that CAPCO was 25% at fault for Mr. Bagwell's death militates towards a determination that the jury was not prejudiced by hearing testimony and arguments regarding CAPCO's insolvency and consequently apportioned the company less fault. The trial court did not abuse its discretion in permitting the testimony of Mr. Bagwell. Thus, we find this assignment of error is without merit.

**Alleged Prejudicial Testimony of Dr. Roggli**

Regarding the issue of Dr. Roggli's testimony, the Appellants assert he analogized that he ceased representing plaintiffs because amphibole asbestos companies like CAPCO went bankrupt and chrysotile asbestos companies, such as UCC and Montello, were being financially targeted as a result. Dr. Roggli, who was accepted by the district court as an expert in asbestos disease causation, testified as an expert for UCC. He testified as to his actual opinions within a reasonable degree of scientific certainty about diagnosis and cause of Mr. Bagwell's mesothelioma.

At trial, Dr. Roggli was questioned by counsel for UCC as to how he became a defense witness in 2000, as this issue was raised earlier in his testimony.

Dr. Roggli gave the following testimony in response:

> The great majority of the cases that I've testified in from 1985 to 2000 involved exposure to insulation products that were high dose amphiboles. By 2000[,] those companies were all gone in litigation and so the plaintiffs then focused on other types of exposures, mostly chrysotile, and the ones that involved low dose chrysotile[.] [I]n my opinion there's no support that low dose chrysotile causes an asbestos-related disease, so I ended up becoming a defense witness.

Thus, he explained that his transition to becoming a defense expert was based upon his observation that high dose amphibole companies no longer remained and his

opinion that low dose chrysotile does not cause asbestos-related disease. Previously in his testimony, he explained his underlying opinion about low dose chrysotile exposure.

In response to the Appellants' objection to this testimony, the trial judge explained that while she did not approve of Dr. Roggli's response, she believed that it was his opinion and did not to give a limiting instruction. While another trier of fact may have reached a different conclusion, we do not find the trial court abused its discretion in allowing this testimony.

**Closing Argument**

A trial court's rulings on possible prejudicial effects resulting from counsel's argument before a jury is reviewed under an abuse of discretion standard. A trial court has broad discretion in controlling the scope of counsels' argument. *Rentrop v. Arch Ins. Co*, 17-0655, p. 8 (La. App. 1 Cir. 12/29/2017), 241 So.3d 357, 366.

The Appellants sought to state in their closing argument that the drilling records relied upon by petroleum geologist Michael Donovan in his testimony were not admitted into evidence. However, experts are permitted to base their opinions on facts or data regardless of admissibility, if those facts are of the type reasonably relied upon by experts in a particular field in forming opinions or inferences on a subject. La. Code Evid. art. 703; *Zimko v. Am. Cyanamid*, 03-0658, p. 37 (La. App. 4 Cir. 6/8/2005), 905 So.2d 465, 490-91. The trial court properly instructed the jury in this instance and did not abuse its broad discretion. Therefore, this assignment of error is without merit.

**Failure to Give a Causation Jury Instruction**

Lastly, the Appellants assert the trial court erred in failing to give the following jury instruction on causation: above background, non-trivial exposures

to asbestos are to be considered significant and substantial contributing factors in causing mesothelioma.

"[A]n appellate court must exercise great restraint before it reverses a jury verdict" due to erroneous jury instructions because "trial courts are given broad discretion in formulating jury instructions, and it is well accepted that a trial court judgment will not be reversed as long as the charge correctly states the substance of the law." *Sayre v. PNK (Lake Charles), LLC*, 15-859, p. 5 (La. App. 3 Cir. 3/23/16), 188 So.3d 428, 433 (citing *Nicholas v. Allstate Insurance Company*, 99-2522 (La. 8/31/00), 765 So.2d 1017). The Third Circuit explained in *Sayre* that a trial judge is tasked with giving accurate jury instructions, stating the applicable law under the facts of the case:

> In a jury trial, the judge is not required to give the instructions submitted by either party; however, the trial judge is obligated to give instructions that properly reflect the law applicable in light of the pleadings and facts in each case. *Id.*[5] Adequate instructions are those that fairly and reasonably point out the issues presented by the pleadings and evidence and that provide correct principles of law for the jury's application to the facts. *Id.* Ultimately, the determinative question is whether the jury instructions misled the jury to the *extent that it was prevented from dispensing justice. Nicholas*, 765 So.2d at 1023.

*Id.,* 15-859, p. 6, 188 So.3d at 434 [emphasis added].

In the matter *sub judice*, as previously noted, there was conflicting expert testimony adduced at trial as to whether exposure to *all types* of asbestos causes mesothelioma. Experts for the Appellees, like Dr. Roggli, testified that exposure to chrysotile asbestos-based products Visbestos and SuperVisbetos does not cause

---

[5] *Billiot v. Terrebonne Parish Sheriff's Office*, 98-246 (La.App. 1 Cir. 2/19/99), 735 So.2d 17.

16

mesothelioma, whereas Dr. Lumen, the Appellants' expert, opined that exposure to any type of asbestos is hazardous and can cause mesothelioma.

The wording of the proposed jury instruction references "exposures to asbestos," which could reasonably be interpreted to cover *all forms* of asbestos. Considering the vast discretion of the trial court, we find its decision to omit the proposed jury instruction was proper. Thus, this assignment of error is without merit.

**General Damages**

In their final assignment of error, the Appellants assert that the jury abused its discretion in awarding $750,000 in general damages for Mr. Bagwell's survival action. Claiming that this award is greatly disproportionate to the mass of past awards for similar injuries, the Appellants maintain that the jury was presented with sufficient evidence of Mr. Bagwell's pain and suffering—from medical records, as well as the testimony of treating physicians, the Appellants, and Mr. Bagwell himself— to justify a more substantial award. Relying upon this Court's holding in another mesothelioma case, *Romano v. Metro. Life Ins. Co.*, 16-0954 (La. App. 4 Cir. 5/24/17), 221 So.3d 176, *writ denied*, 17-1072 (La. 10/9/17), 228 So.3d 747*,* the Appellants maintain that the lowest reasonable amount of general damages for survival damages is approximately $1,500,000. Consequently, the Appellants contend that the trial court erred in denying their judgment notwithstanding verdict, or in the alternative, motion for new trial.

The jury awarded Mr. Bagwell $250,000 for each of the following categories of general damages: 1) past physical pain and suffering and mental anguish; 2) physical disability; and 3) loss of enjoyment of life. The Appellants aver that

considering Mr. Bagwell's age at the time of his diagnosis and death; the length of his suffering; and, the severity of the procedures he endured, a $750,000 survival damage award is unconscionably low. We agree.

Only a certain portion of Mr. Bagwell's survival action, was recoverable from RMC, as previously discussed. In a survival action, designated beneficiaries are granted a right of action to recover the damages that a person, who suffered and died, would have been entitled to recover from a tortfeasor had he or she lived. La. Civil Code art. 2315.1. A decedent's surviving spouse and children are in the first category of designated beneficiaries. La. Civ. Code article 2315.1 (A) (1).

General damages, which are "speculative in nature and cannot be fixed with mathematical certainty," involve: mental or physical pain or suffering, inconvenience, the loss of intellectual gratification or physical enjoyment, or other losses of life or life-style which cannot be definitely measured in monetary terms.[6] *Waters v. Oliver*, 16-1262, p. 18 (La. App. 4 Cir. 6/22/17), 223 So.3d 37, 49 (citations omitted); *Bellard v. American Central Ins. Co.*, 07-335, p. 29 (La. 4/18/08), 980 So.2d 654, 674, (citation omitted); *Jones v. Progressive Sec. Ins. Co.*, 16-463, p. 20 (La. App. 3 Cir. 12/29/16), 209 So.3d 912, 925-26. The factors to be considered in assessing quantum for pain and suffering are severity and duration. *Simon v. Reel*, 03-0932, p. 6 (La. App. 3 Cir. 3/3/04), 867 So.2d 174, 178-79 (citation omitted).

General damage awards are reviewed under an abuse of discretion standard because the trier of fact is in the best position to evaluate witness credibility and

---

[6] Loss of enjoyment of life "refers to detrimental alterations of a person's life or lifestyle or a person's inability to participate in the activities or pleasures of life that were formerly enjoyed." *McGee v. A C and S, Inc.*, 05-1036, p. 3 (La. 7/10/06), 933 So.2d 770, 773. Unlike pain and suffering, "whether or not a plaintiff experiences a detrimental lifestyle change depends on both the nature and severity of the injury and the lifestyle of the plaintiff prior to the injury." *Id.*, 05-1036, p. 5, 933 So.2d at 775.

see the evidence firsthand. *Antippas v. Nola Hotel Grp., LLC*, 17-0798, pp. 15-16 (La. App. 4 Cir. 2/27/19), 265 So.3d 1212, 1222–23 (citations omitted). "An appellate court may not overturn an award for general damages unless it is so out of proportion to the injury that it shocks the conscience." *Id*. at p.16 (quoting *Lee v. Lu*, 05-899, p. 9 (La. App. 5 Cir. 4/11/06), 931 So.2d 365, 371 (citation omitted)).

In *Romano,* we held that a judgment awarding $500,000 in general damages was inadequate for an employee who was exposed to asbestos at work. 16-0954, p. 10-12, 221 So.3d at183-84. The plaintiff, who was still alive at the time of the trial, had been diagnosed with mesothelioma and had been in pain for two years following his diagnosis. *Id*. The *Romano* Court, after reviewing and using other mesothelioma general damage awards as a guide, concluded that general damages in mesothelioma cases in this jurisdiction have ranged from $1,416,580.54 to $2,000,000. *Id*., 16-0954, p. 12-13, 221 So.3d at 184. Consequently, the Court resolved that the $500,000 award was "far too low" and increased the award to $1,500,000, which it determined to be the lowest reasonable award under the facts presented. *Id*., 16-0954, p. 13, 221 So.3d at 184.

Mr. Bagwell testified that he suffered immensely from the time of his diagnosis. During the three years leading up to his passing, his breathing and overall condition worsened to the point that he could no longer care for himself, eventually ending up in hospice care. He testified about enduring numerous painful and uncomfortable procedures including, but not limited to: thoracic cavity incisions to have drain tubes inserted in his right lung to drain over 3 liters of fluid from his chest; several biopsies and surgeries on his thoracic cavity; pleural effusion and fluid in the lungs causing lung collapse; intravenous chemo treatments with chemicals that burned his hand; chemo-treatment cycles that led to

19

debilitating after-effects of oral lesions, nosebleeds, rectal bleeding, rashes, and a super flu or super pneumonia like sickness; shortness of breath requiring oxygen; and, an unsuccessful cytoreductive surgery including thoracotomy that resulted in the removal of a rib.

He further stated that he was at the pinnacle of his career as an aerospace welder when he physically became unable to work. Expecting to live into his eighties based upon family history, Mr. Bagwell's condition deteriorated to the point that his wife had to retire early to care for him and he was later removed to hospice care prior to his death.

In light of the depth and longevity of Mr. Bagwell's suffering, we find that the jury abused its discretion in awarding him only $750,000 in general damages. Moreover, this sum is "greatly disproportionate to the mass of past awards for truly similar injuries," which serve as guide for our review. *Romano*, 16-0954, p. 11, 221 So.2d at 183 (citing *Duncan v. Kansas City So. Rail. Co.*, 00-0066 (La. 10/30/00), 773 So.2d 670); *Theriot v. Allstate Ins. Co.*, 625 So.2d 1337, 1340 (La. 1993).

Like the *Romano* court, we reviewed recent mesothelioma general damage awards:

- *Craft v. Ports Am. Gulfport, Inc.*, 18-0814 (La. App. 4 Cir. 5/8/19), 273 So.3d 517; affirming a $1,600,000 general damage award for a retired longshoreman diagnosed with mesothelioma;

- *Rando v. Anco Insulations Inc.*, 08-1163 (La. 5/22/09), 16 So.3d 1065; the Supreme Court affirmed a $2,800,000 award of general damages for a former pipe fitter whose mesothelioma was caused by asbestos exposure at his job site;

20

- *Chaisson v. Avondale Indus., Inc.*, 05-1511 (La. App. 4 Cir. 12/20/06), 947 So.2d 171; holding that the trial court did not commit manifest error by entering judgment on the jury's selected survival damage amount of $1,416,580.54, for the death of a pipefitter's wife who was diagnosed with mesothelioma;

- *Torrejon v. Mobil Oil Co.*, 03-1426 (La. App. 4 Cir. 6/2/04), 876 So.2d 877; holding that the trial court did not abuse its discretion in awarding $1,800,000.00 in general damages to a merchant mariner's widow, individually and as personal representative of his estate, based upon suffering decedent endured prior to his death as a result of mesothelioma caused by asbestos exposure; and,

- *Hennegan v. Cooper/T. Smith Stevedoring Co.*, 02-0282 (La. App. 4 Cir. 12/30/02), 837 So.2d 96; affirming a $2,500,000 general damage award for a seaman diagnosed with malignant mesothelioma.

Our review of these cases indicates that Mr. Bagwell's survival damages should be in the $1,450,000 to $1,800,000 range. Pursuant to Louisiana jurisprudence requiring that damages can only be raised to the lowest reasonable amount, we raise Mr. Bagwell's award from $750,000 to $1,450,000.[7]

Moreover, for the same reasons we find that the jury abused its discretion, we further find that the trial court erred in denying the Appellants' judgment notwithstanding verdict and motion for new trial as to the issue of general damages only, under the facts presented.

As noted earlier, a judgment notwithstanding verdict "is warranted when the facts and inferences point so strongly and overwhelmingly in favor of one party that the court believes that reasonable men could not arrive at a contrary verdict."

---

[7] "Only after making the finding that the record supports that the lower court abused its much discretion can the appellate court disturb the award, and then only to the extent of lowering it (or raising it) to the highest (or lowest) point which is reasonably within the discretion afforded that court." *Coco v. Winston Indus., Inc.*, 341 So. 2d 332, 335 (La. 1976).

*Chaisson*, 05-1511, pp. 7-8, 947 So.2d at 180 (citations omitted). In order to grant a judgment notwithstanding verdict, the jury's verdict must be "unsupported by any competent evidence." *Id*. Similarly, pursuant to La. Code Crim. Proc. art. 1972 (1), a motion for new trial must be granted when the verdict or judgment appears contrary to the law and evidence. *Romano*, 16-0954, p. 14, 221 So.3d at 184-85. The criteria for granting both motions was satisfied in the matter *sub judice* based upon our prior discussion of Mr. Bagwell's suffering combined with the grossly disproportionate award made by the jury.

Finally, however, our determination that the jury verdict as to general damages should be increased does not result in a proportionate increase to the amount awarded by the district court because RMC— as a Jones Act defendant and pursuant to the summary judgment and directed verdict— is only responsible for compensating the Appellees for Mr. Bagwell's past physical pain and suffering and mental anguish. As noted above, the jury awarded $250,000 to Mr. Bagwell for each of the three categories of general damages listed on the special jury interrogatories. The jury clearly intended to award Mr. Bagwell for his past physical pain and suffering and mental anguish in equal proportion to the other two general damage categories of physical disability and loss of enjoyment of life. Accordingly, we increase the $250,000 award for past physical pain and suffering and mental anguish to $483,333.34, which is one-third of the increased general damage award. Therefore, the $1,265,000 award of the trial court is hereby increased to $1,498,333.34.[8]

---

[8] As previously stated, the trial court calculated Mr. Bagwell's damages by including $630,000 for past medical expenses; $385,000 in lost wages, past and future; and, his award for past physical pain and suffering and mental anguish, which is now $483,333.34. These sums now total $1,498,333.34.

## DECREE

For the foregoing reasons, we find that, solely as to the issue of general damages for the survival action of Jerry R. Bagwell, the jury erred in assessing general damages and trial court erred in denying the judgment notwithstanding verdict, or in the alternative, motion for new trial, as to damages only. Accordingly, we reverse in part the November 27, 2018 and the February 19, 2019 judgments, and hereby increase Mr. Bagwell's damages from $1,265,000 to $1,498,333.34. In all other respects, we affirm the November 27, 2018 and February 19, 2019 judgments.

**AFFIRMED IN PART;
REVERSED IN PART
AND RENDERED**